United States Court of Appeals,

Fifth Circuit.

No. 96-40038.

John R. TURCO, Plaintiff-Appellant,

v.

HOECHST CELANESE CHEMICAL GROUP, INC., et al., Defendants,

HOECHST CELANESE CHEMICAL GROUP, INC., Defendant-Appellee.

Dec. 23, 1996.

Appeal from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, JONES and DeMOSS, Circuit Judges.

PER CURIAM:

This appeal arises out of a suit filed under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et. seq.* The plaintiff, John R. Turco, alleges that he was fired from his job because of an insulin-dependent diabetic condition. However, the United States District Court for the Southern District of Texas, per Judge Hugh Gibson, found otherwise and granted summary judgment in favor of the defendant. We affirm the district court's decision.

I. Background

Turco worked as a chemical process operator for Hoechst Celanese Chemical Group, Inc. ("Hoechst") at its Clear Lake, Texas plant for thirteen years. He worked a rotating shift, as there was no "day shift" for any process operator, and was routinely required to work through the night. In the early to mid-1980s Turco was diagnosed with adult onset diabetes and began taking oral

1

medication to regulate his condition. This treatment seemed to succeed for several years because he continued working his shift without complaint. However, in January, 1994, Turco learned that an exacerbation of his diabetic condition required him to use insulin. Turco's co-workers, supervisors, and the company's human resource personnel were all well aware, nearly from the onset, about Turco's diabetic condition and its progression.

Although Turco's supervisors considered him a capable operator overall, Turco had a history of ignoring Hoechst policies and procedures. This was clearly evidenced in his year-end performance appraisals of 1992 and 1993. Each emphasized his need to improve his attitude, cooperation, poor attendance record, and commitment to safety. Turco's performance, by his own admission, began to deteriorate even more in 1994. Given his admitted, increasing difficulties on the job, Turco responded on March 11, 1994 to an internal job posting for an available process analyzer technician position. However, he was not selected for the job.

On March 21, 1994, Turco submitted a letter written by his treating physician, Dr. James Eden, recommending that he be transferred to a daylight position, concluding that the more predictable eating, sleeping, and exercise patterns accompanying an exclusively daytime schedule would facilitate the regulation of his blood sugar levels. In response to this letter, Hoechst's company nurse met with Turco and requested that he make an appointment with a company-selected endocrinologist so that his diabetic condition could be independently evaluated. Whether the responsibility lay

2

with Turco or with the nurse to arrange this appointment is subject to considerable controversy in the record. This factual dispute notwithstanding, Turco clearly never met with this endocrinologist.

Though evidence of other procedural lapses appears in the record, it is primarily two incidents of policy infractions which contributed to Turco's termination. The first occurred on March 24, 1994, when Turco hooked the plant's fire water to the high pressure side of the liquids incinerator, contaminating the fire water with highly flammable organic material. The potential ramifications of using water that is infected with highly flammable organic materials to put out a fire go without saying. Turco clearly admitted that this mistake was "extremely dangerous." In fact, he was afraid he was going to be fired because he could have not only hurt himself, but could have hurt others. Hoechst considered firing Turco over this incident, but his supervisor, Don Hardt, convinced management to give him another chance. Instead, on May 2, 1994, he was subjected to written corrective action for his acts.

The second incident occurred while Turco was on written corrective action. On May 13, 1994, Turco exposed his arms to acrylic acid polymer while cleaning a strainer on a crude acrylic truck. Instead of washing the exposed area for fifteen minutes and promptly reporting the incident to his supervisor, as required by Hoechst policy, Turco went home after his shift and went to bed. He was awakened during the early morning because of the discomfort and swelling in his forearms. He reported the injury upon his

arrival at work the next morning and a physician subsequently treated him for first degree chemical burns. Shortly thereafter, on June 3, 1994, citing Turco's "repeated behavior for not following procedures" and his "failure to demonstrate a sustained willingness to change this behavior," Hoechst terminated Turco's employment.

Following his termination, Turco sued, alleging that Hoechst violated the ADA in two ways. First, Hoechst failed to accommodate Turco's diabetes. Second, he alleges that his termination reflected unlawful discrimination on the basis of his insulin-dependent diabetic condition. Judge Gibson granted summary judgment in favor of the defendant, finding that Turco was not a "qualified individual with a disability" because he could not perform the essential functions of his job without putting himself or others in dangers way and no reasonable accommodation would be able to eliminate this risk. Turco now appeals.

## II. Discussion

### A. Standard of Review

We review a summary judgment de novo, as if we were the district court itself. *E.g., McMurtray v. Holladay,* 11 F.3d 499, 502 (5th Cir.1993). Therefore, summary judgment is appropriate if there is "no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

### B. The Americans with Disabilities Act

The Americans with Disabilities Act provides that "no covered

4

entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). A "disability" includes "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). A "qualified individual with a disability" means an "individual with a disability who, with or without reasonable accommodations can perform the essential functions of the employment position that such individual holds or desires." *Id.* at § 12111(8).

To prevail on an ADA claim, a plaintiff must prove that 1) he has a "disability"; 2) he is "qualified" for the job; and 3) an adverse employment decision was made solely because of his disability. *Rizzo v. Children's World Learning Centers, Inc.,* 84 F.3d 758, 763 (5th Cir.1996).

C. Granting summary judgment on grounds not briefed

The crux of Turco's first argument centers around the allegation that the lower court erred by granting summary judgment on grounds not urged or briefed by the defendant. He claims that when Hoechst moved for summary judgment, it argued only that it had terminated Turco for "legitimate, non-discriminatory reasons" and that Judge Gibson granted the motion on the basis that Turco was not a "qualified" individual, the second element of his ADA claim.

We find that Hoechst did in fact raise the issue of whether

Turco was "qualified" in its motion. Although it was raised in a footnote, it clearly places Turco on notice that the issue of his qualification was part of the summary judgment submitted by the defendant. Hoechst plainly writes in its footnote that "even assuming the plaintiff is disabled under the ADA, there is no evidence that plaintiff is a "qualified individual with a disability' within the meaning of the ADA." (R. 274).

Judge Gibson granted Hoechst's motion on facts that were not specifically raised in the motion, but it is well settled that he is entitled to do so. Rule 56 of the Federal Rules of Civil Procedure requires a court to consider the whole record when ruling on a motion for summary judgment. The record includes the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." FED.R.CIV.P. 56(c). Although a court may not weigh the evidence to determine its truth nor draw inferences from the facts, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986), Rule 56 clearly permits a court to consider the whole record, and "not just the portion highlighted by the motion." *Ramirez v. Burr,* 607 F.Supp. 170, 173 (S.D.Tex.1980) (*citing Keiser v. Coliseum Properties, Inc.,* 614 F.2d 406, 410 (5th Cir.1984)). Moreover, a district judge is not compelled to limit the basis for a summary judgment on those facts listed in the motion for summary judgment. *United States v. Houston Pipeline,* 37 F.3d 224, 227 (5th Cir.1994). In essence, a district court has the ability to grant a summary judgment on facts not briefed by the movant, as long as

6

the non-movant has notice of the issue.

D. Qualified individual with a disability

It is undisputed that Turco's diabetic condition is considered a "disability" under the ADA. However, the contention lies in whether Turco is a "qualified individual" with a disability, that is, whether he is a person who, with or without reasonable accommodation, can perform the essential functions of his employment position. Turco asserts that there are genuine issues of material fact with regards to his "qualification" under the ADA on several bases.

We have defined an "otherwise qualified person as "one who is able to meet all of the program's requirements in spite of his handicap' ". *Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied,* --- U.S. ----, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994) (*quoting Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 2367, 60 L.Ed.2d 980 (1979)). To avoid summary judgment on whether he is a qualified individual, Turco needs to show 1) that he could perform the essential functions of the job in spite of his disability or 2) that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job. *Id.*

After reviewing the summary judgment evidence before us we find that Turco was not qualified to perform the essential functions of a chemical process operator. This is evidenced by his own testimony. He testified in his deposition that walking and climbing "are all things that a chemical process operator has to

7

do" and that "good concentration" is "most definitely" important to a process operator. Yet, he recalls specific instances when his diabetes affected his ability to do his job. For example, he remembers working on the "control room board" while one of the operators was putting a piece of apparatus in service and not being able to concentrate on what to do next. He also recalls walking to an incinerator at one point and his legs hurting so bad that he could hardly walk, he couldn't climb, and he lost his concentration. There were times that his sugar level was so low that he could not remember his name. On the one hand he sets out the essential job requirements of a chemical process operator and on the other he basically admits that he cannot fulfill those basic requirements.

Turco next contends that his ailments and concentration problems would all be alleviated if Hoechst had accommodated him and switched him to a day-time shift. We find this argument implausible for two reasons. First, regardless of whether Turco was working a straight day-shift or a rotating shift, he would still, by his own admission, be unable to perform the essential functions of an operator because both the physical and mental demands would be the same. He would still need to walk, climb and concentrate, but he would still not be able to perform these essential functions. Second, Hoechst has no straight day-shift chemical operator positions—all operator positions are on rotating shifts. Moving one operator to a straight day shift would place a heavier burden on the rest of the operators in the plant. And an

8

accommodation that would result in other employees having to work harder or longer is not required under the ADA. *Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1125 (10th Cir.1995); 29 C.F.R. § 1630.2(p)(2)(v).

Turco briefly mentions that Hoechst was also unaccommodating because it did not hire him as an analyzer technician. However, this position required him to walk, climb, and concentrate as much as his previous position. Thus, Turco would be, by his own admission, just as unqualified for this accommodation. Additionally, Hoechst is not required to create light duty jobs to accommodate disabled employees.[1] The law does not require affirmative action in favor of individuals with disabilities. It merely prohibits employment discrimination against qualified individuals with disabilities, no more and no less. *Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995).

Turco is not only unqualified because he cannot perform the essential functions of his job, but he is also unqualified due to the safety risk that he imposes upon himself and others. The ADA allows qualification standards that "include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace," and defines a "direct threat' as a significant risk to the health or safety of others

---

[1]*See Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996) ("[an employer] is not required to fundamentally alter its program. Nor is the [company] required to find or create a new job for the [plaintiff] ...") (*quoting Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir.1991).

9

that cannot be eliminated by reasonable accommodation. 42 U.S.C. § 12113(b). Turco's position at Hoechst required him to work with complicated machinery and dangerous chemicals. Any diabetic episode or loss of concentration occurring while operating any of this machinery or chemicals had the potential to harm not only himself, but also others. This would be a walking time bomb and woe unto the employer who places an employee in that position.

In sum, Turco was not "qualified" under the ADA for two reasons. First, he was not qualified to perform essential duties required by Hoechst. Second, he was not qualified due to the safety concerns presented by the severity and volatility of his diabetes. No reasonable accommodation could be made that would qualify Turco to perform his job in spite of his diabetes.

E. Discriminatory Intent

Turco alleges that the lower court resolved credibility-intensive fact issues regarding discriminatory intent. Although Judge Gibson addressed discrimination in his opinion and order, he never actually rules on this issue. He granted summary judgment on the sole issue of whether Turco was a "qualified" individual under the ADA. However, even had this issue been ruled on by Judge Gibson, there is no evidence whatsoever that the actions taken by Hoechst were discriminatory in nature. The reason it fired Turco was because, among other incidents, he had two accidents in the span of two months. These last two accidents jeopardized both his safety and the safety of others. Furthermore, there is no evidence that Turco was treated any differently than

10

any other employee with the same condition.

## III. Conclusion

Based on the foregoing, we AFFIRM the district court's decision granting summary judgment in favor of the defendant.