Patricia LEGER

v.

TEXAS EMS CORPORATION.

Civil Action No. G–98–022.

United States District Court,
S.D. Texas,
Galveston Division.

Aug. 25, 1998.

---

Caldwell Fletcher, Attorney at Law, Houston, TX, Richard Lee Melancon, Melancon and Hogue, Friendswood, TX, Kathrine B. Schmitt, Attorney at Law, Houston, TX, for Patricia Leger, plaintiff.

Phyllis A.M. Pollard, Julie A. Springer, Scott Douglass Luton and McConnico, Austin, TX, for Texas EMS Corporation, defendant.

### ORDER GRANTING SUMMARY JUDGMENT

KENT, District Judge.

In this disability discrimination case, Plaintiff brings claims under the Americans with Disabilities Act ("ADA"), in addition to state law claims of intentional infliction of emotional distress, workers' compensation discrimination, and negligence. Now before the Court is Defendant Texas EMS Corporation's Motion for Summary Judgment, filed July 10, 1998. For the reasons set forth below, Defendant's Motion is **GRANTED.**

## I. FACTUAL BACKGROUND

Until April of 1997, Plaintiff Patricia Leger was employed as an Emergency Medical Technician ("EMT") for Texas EMS in Hitchcock, Texas. EMTs must be certified by the Texas Department of Health, which requires the successful completion of various training and examination requirements. Plaintiff was trained and certified as an EMT and as an Emergency Medical Services ("EMS") Instructor and Examiner. In May of 1994, Leger reported a back injury that she received while attempting to lift a patient. She was released to light duty, and assigned to billing duties in the Houston office. Because she was unable to sit for a long enough period of time to make the drive from her home to the Houston office, and unable to perform a sitting job, she took a paid temporary leave of absence. On July 8, 1994, Leger was medically released with no restrictions, and she returned to work as an EMT on July 22, 1994.

Thereafter, in February of 1996, Leger reported to Texas EMS that she was again unable to work because of recurring back problems related to her injury. Texas EMS again gave her an indefinite leave of absence so that she could be treated, and arranged for her to obtain disability benefits. Leger never returned to work after February 15, 1996.

In April of 1996, Leger filed suit in Texas state district court against Texas EMS, alleging negligence and seeking damages for the back injuries she allegedly sustained in May of 1994. According to Texas EMS, throughout this time, Leger never sought to return to work, never requested Texas EMS to accommodate her medical restrictions, never inquired as to the availability of alternate light-duty assignments, and never advised Texas EMS that she had been released for light duty by her physician.[1]

---

1. Leger's doctors have released her for light-duty work, meaning she is restricted from lifting over 30 pounds and from any extended sitting, stooping, crawling, bending, or climbing.

Leger continued to receive disability benefits from Texas EMS until on or about April 28, 1997, when Texas EMS notified Leger that she had been terminated. According to Texas EMS, Leger was terminated due to her stated inability, in a deposition taken pursuant to the civil action she filed, to ever work on an ambulance again.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The movant may meet this burden by pointing out to the Court that there is an absence of proof on any essential element of the nonmovant's case. *See id.*, 477 U.S. at 325, 106 S.Ct. at 2554. Once this burden is met, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *See Matsushita*, 475 U.S. at 585–87, 106 S.Ct. at 1355–56; *Wise v. E.I. DuPont De Nemours & Co.*, 58 F.3d 193, 195 (5th Cir.1995). The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead must come forward with specific facts to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56 (citing FED. R. CIV. P. 56(e)).

The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See Anderson*, 477 U.S. at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

## III. ADA CLAIMS

■ First, Defendant moves for summary judgment on Plaintiff's ADA claims. The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability ... in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on her ADA claim, Plaintiff must prove 1) that she has a "disability," 2) that she is "qualified" for her position, and 3) that an adverse employment decision was made solely because of her disability. *See Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir.1996); *Rios v. Indiana Bayer Corp.*, 965 F.Supp. 919, 921 (S.D.Tex.1997).

■ At the outset, the Court must determine whether Defendant has properly relied on Plaintiff's deposition in a prior, related case as summary judgment evidence. The deposition relied upon by Defendant was taken in a lawsuit Leger filed in 1996 in state court against Texas EMS, alleging negligence and workers' compensation claims and seeking damages for the incident in May of 1994 when she injured her back (the "1996 lawsuit"). The deposition was taken on April 2, 1997.

Rule 32(a)(4) of the Federal Rules of Civil Procedure provides that,

> when an action has been brought in any court of the United States or of any State and another action involving the same subject matter is afterward brought between the same parties or their representatives

or successors in interest, all depositions lawfully taken and duly filed in the former action may be used in the latter as if originally taken therefor.

FED. R. CIV. P. 32(a)(4). Plaintiff makes no substantive evidentiary objections to use of the deposition, nor does she claim that the deposition was not "lawfully taken and duly filed." Plaintiff nevertheless argues that the deposition is inadmissible for summary judgment purposes because "there were no [ADA] counts nor any employment related counts in the state court litigation." Although Leger did not allege ADA causes of action in the 1996 lawsuit, her causes of action were indeed "employment related," including a cause of action against her employer for alleged job-related injuries, as well as a cause of action under the Texas Workers' Compensation Act. Furthermore, Leger amended her Petition in the 1996 lawsuit to include wrongful termination, retaliation, and fraud. The 1996 lawsuit and the instant action both allege negligence and seek damages for the injuries Plaintiff allegedly sustained in 1994, and involve identical parties. The Court therefore finds that the 1996 lawsuit involves the "same subject matter" as the current lawsuit, and that Plaintiff's deposition in the 1996 lawsuit is admissible for summary judgment purposes in this action.

### A. *Fact Issue as to Whether Plaintiff is "Disabled" Under the ADA*

Defendant first argues that Leger does not have a disability under the ADA. A "disability" is defined as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," a "record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(2). Included in the EEOC's definition of "major life activities" are "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). To be considered substantially limited in one of these activities, an individual must be either (i) unable to perform a major life activity that the average person in the general population can perform, or (ii) significantly restricted as to the condition, manner or duration under

which she can perform a particular major life activity as compared to an average person in the general population. 29 C.F.R. § 1630.2(j)(1).

The Court finds that there is at least a fact issue as to whether Leger's alleged injuries rendered her "disabled" under the ADA. Plaintiff has submitted medical records showing that she has a 30 pound lifting restriction. A diagnosis from April 10, 1996 indicates a diagnosis of "posterior bulging anulus at L5–S1" and "mild facet hypertrophy" at L4–5. In her deposition, Leger stated that her back injuries prevented her from being able to "lift a lot," and in her affidavit she states that she is restricted by her doctors from extended sitting, stooping, crawling, bending, and climbing. Giving Plaintiff the benefit of the doubt on summary judgment, the Court is of the opinion that there is at least a fact issue as to whether Plaintiff is "significantly restricted" as to the condition, manner or duration under which she can perform routine job tasks.

### B. *Reasonable Accommodation*

As part of her *prima facie* case under the ADA, Plaintiff must also show that she is "qualified" for her job. *See Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995). The ADA term "qualified individual with a disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions" of her job. 42 U.S.C. § 12111(8) (1995). Defendant contends that Plaintiff's injury was such that she was unable to perform the essential functions of her job as an Emergency Medical Technician ("EMT").

■ In discrimination cases under the ADA, the plaintiff bears the burden of showing that she is "otherwise qualified" or can "reasonably perform a job." She can show this in either of two ways: (1) by proving that she can perform all essential job functions without modifications or accommodations, or (2) that some reasonable accommodation by the employer would enable her to perform her job. *See Austin State Hosp. v. Kitchen,* 903 S.W.2d 83, 91 (Tex.App.—Austin 1995, no writ).

Plaintiff does not argue that she can perform all the essential job functions of an EMT; rather, she argues that Texas EMS had a duty to reasonably accommodate her disability by reassigning her to a dispatcher position. Plaintiff bears the burden of proving reasonableness on summary judgment. *See Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 682 (5th Cir.1996). The term "reasonable accommodation" is defined to include, *inter alia*, job restructuring, part-time or modified work schedules, and reassignment to a vacant position. *See* 42 U.S.C. § 12111(9)(B). However, for the accommodation of reassignment to be reasonable, a substitute position must first exist and be vacant. *See Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 809-10 (5th Cir.1997) ("Under the ADA, an employer is not required to give what it does not have."), *cert. denied*, —— U.S. ——, 118 S.Ct. 1050, 140 L.Ed.2d 113 (1998). A plaintiff must also offer evidence that she is otherwise qualified to meet the hiring criteria for any theoretical position to which she could be reassigned. Moreover, reasonable accommodation does not require an employer to create "light duty" jobs for reassignment. *See id.* at 809; *Turco*, 101 F.3d at 1094; *Newman v. Chevron U.S.A.*, 979 F.Supp. 1085, 1091 (S.D.Tex. 1997) (Kent, J.). Employers are also not required to assign employees to occupied positions or promote employees as an accommodation. *See* 29 C.F.R. pt. 1630, App. § 1630.2(o); *White v. York Intern. Corp.*, 45 F.3d 357, 362 (10th Cir.1995). Finally, "an employer is not required to find another job for an employee who is no longer qualified to perform the duties of the job previously held but discontinued by virtue of a disability, unless the employer normally provides such alternative employment under its existing policies." *Reigel v. Kaiser Found. Health Plan*, 859 F.Supp. 963, 972 (E.D.N.C.1994).

Leger claims that she requested a position as a dispatcher. This claim is based on the following statement in Leger's affidavit: "I requested light duty assignment [in March of 1996] because the partial pay I was receiving was inadequate to pay my bills." However, in her deposition given in the 1996 lawsuit, Plaintiff acknowledged on *two separate occasions* that she never requested another job at Texas EMS. Rather, according to her own testimony, she merely assumed that "if they had something for me to do they would have come to me." Leger does not provide any evidence to refute her deposition testimony, given *only one month* after she allegedly requested light duty assignment, that she never requested such an assignment. Moreover, the statement in her affidavit, given over two years later in July of 1998, does not indicate that she requested such an assignment on account of her alleged disability.

Furthermore, Leger also testified in April of 1997 that she was unable to perform a sitting job in Houston that had been assigned to her in 1994 because of her injury, indicating that she would not be able to perform an essential function of the job as dispatcher: sitting. Moreover, Plaintiff does not show, as she is required to do, that either of the two dispatcher positions at Texas EMS was vacant when she quit working because of her back injury in 1996, or that Texas EMS normally assigns the dispatcher jobs to its EMTs who suffer disabilities. For all of these reasons, the Court finds that Plaintiff has failed to meet her burden of showing that Defendant had a duty to assign her to a dispatcher position. Defendant's Motion for Summary Judgment on Plaintiff's ADA claims should be **GRANTED.**

## IV. STATE LAW CLAIMS

### A. *Intentional Infliction of Emotional Distress*

Defendant next moves to dismiss Plaintiff's intentional infliction of emotional distress claim. Texas law establishes a high standard for establishing the tort of intentional infliction of emotional distress, and Plaintiffs' allegations, even if completely true, fall well short of the requirements. To prevail on a claim of intentional infliction of emotional distress in Texas, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *See*

*Ugalde v. W.A. McKenzie Asphalt Co.*, 990 F.2d 239, 243 (5th Cir.1993) (citing *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir.1989)). Whether conduct is extreme and outrageous is initially a question of law for the Court. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). Liability will only be found " 'where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* (quoting RESTATEMENT (SECOND) TORTS § 46 cmt. d). Liability does not extend to mere insults, indignities, threats, annoyances, or petty oppressions. *See Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1143 (5th Cir.1991).

 In this case, even if all of Plaintiff's allegations are true, Defendant's actions do not even approach the level of outrageousness required to support the tort of intentional infliction of emotional distress. Moreover, Plaintiff does not even attempt to address Defendant's argument for summary judgment of her intentional infliction claim. Accordingly, Defendant's Motion for Summary Judgment of Plaintiff's intentional infliction of emotional distress claim is **GRANTED,** and such claim is **DISMISSED WITH PREJUDICE.**

### B. *Workers' Compensation Discrimination*

 Plaintiff also fails to respond to Defendant's Motion for Summary Judgment on her workers' compensation retaliation claim. It is clear under Texas law that "only employees of subscribers to the Act can bring workers' compensation claims." *Texas Mexican Ry. Co. v. Bouchet*, 963 S.W.2d 52, 56 (Tex.1998). In *Bouchet*, the Texas Supreme Court rejected arguments that non-subscribers to workers' compensation benefits can be subject to retaliation discrimination claims under article 8307c of the Workers' Compensation Act (now TEX. LAB. CODE § 451.001). It is undisputed in this case that Texas EMS is not a subscriber to workers' compensation. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's

retaliation claim under the Workers' Compensation Act is **GRANTED,** and such claim is **DISMISSED WITH PREJUDICE.**

### C. *Negligence*

Finally, Defendant argues for summary judgment of Plaintiff's negligence claim. The claim of negligence relates to the injuries Plaintiff allegedly sustained in May of 1994 when she injured her back attempting to lift a patient, and is based on Plaintiff's allegations that (1) Defendant had an insufficient number of workers to ensure the safety of all engaged in the labor; and (2) Defendant had a defective method of operation and training regarding the lift she was asked to make.

With regard to Plaintiff's allegations of defective training, Defendant has submitted summary judgment evidence showing that Leger was certified as a trained emergency medical technician and a certified instructor for emergency medical services training courses. In the course of her certification, Plaintiff received training on techniques of lifting and moving patients, including the use of equipment such as stretchers and stair chairs. The course materials make clear that such training is necessary to "minimize injuries and discomfort for both patient and EMT."

 Texas EMS did have a duty under state law to ensure that its EMTs were properly certified. However, it had no duty to further train its certified EMTs; especially those who were themselves EMS trainers. Rather, Texas EMS is entitled to rely on the presumption that its state-certified technicians are properly trained in those areas in which they are certified. *See Hoechst Celanese Corp. v. Compton*, 899 S.W.2d 215, 227 (Tex.App.—Houston [14th Dist.] 1994, writ denied) (company was not negligent for failing to enquire into the training of state-certified peace officers). Moreover, Leger never informed her supervisor that she suspected her training was inadequate, such as would raise any question of Defendant's duty to inquire into her training.[2]

---

2. In fact, in her deposition Leger acknowledges that she was trained in lifting techniques but that

she just did not remember any of the techniques she was taught. Therefore, it appears it was her

 Finally, Plaintiff's claim that Defendant had too few workers to ensure safety is also insufficient to survive summary judgment on her negligence claim. Once again, Leger was trained in lifting techniques, including two-man lifting techniques and using a partner with lifting maneuvers. The injury report filled out for her insurance company after the 1994 incident indicates that Leger had a partner helping her with the lift at the time she was injured. According to the user's manual for the "stair chair" Leger was using to lift the patient, two operators should be able to carry a patient weighing up to 175 pounds using the stair chair. In her deposition, Leger testified that the patient she was attempting to lift weighed between 150 and 170 pounds. Furthermore, Leger testified that she did not even call for additional assistance for help in lifting the patient. Texas EMS can have no way of knowing that assistance is required above and beyond that typically needed if its EMTs do not request additional assistance. Therefore, it cannot be found negligent for failing to provide such additional assistance.

For the above reasons, the Court finds that Texas EMS was not negligent with respect to the May 1994 incident in which Plaintiff allegedly injured her back. Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's negligence claim is **GRANTED,** and such claim is **DISMISSED WITH PREJUDICE.**

## V. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety. This case is **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs, expenses and attorneys' fees incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider and the like, unless justified by a *compelling* showing of new evidence not available at the time of the instant submissions. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the United States

Court of Appeals for the Fifth Circuit, as may be appropriate in due course.

**IT IS SO ORDERED.**

### *FINAL JUDGMENT*

For the reasons set forth in the Court's Order Granting Summary Judgment entered this date, Defendant's Motion for Summary Judgment is **GRANTED** in its entirety. This case is **DISMISSED WITH PREJUDICE.** The parties are **ORDERED** to bear their own taxable costs, expenses and attorneys' fees incurred herein to date.

**THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

---

failure to retain knowledge, rather than a failure to train, that caused her alleged injuries.