# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00690-CV

**Elliott Frank Adams, Appellant**

**v.**

**Artco-Bell Corporation, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
## NO. 220,035-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Elliott Frank Adams appeals from a final summary judgment in favor of his former employer, appellee Artco-Bell Corporation, on claims Adams had asserted under the Americans with Disabilities Act (ADA) and counterpart provisions of the Texas Labor Code. We will affirm the judgment.

## BACKGROUND

Appellee Artco-Bell owns and operates a Temple manufacturing facility where it makes products that include those hard plastic chairs used in school classrooms. Appellant Adams was employed by Artco-Bell from the mid-1990s until February 2005. Adams worked on the floor of the facility's injection molding department, where, at relevant times, he served as a "lead person" or foreman. Adams's employment ended shortly after he informed Artco-Bell that he had

received doctor's orders permanently restricting him to "light duty" work due to knee problems and Artco-Bell informed him that no "light duty" positions were available.[1]  Adams subsequently sued Artco-Bell, alleging that the company had discriminated against him "because of" an actual or perceived "disability" in violation of the ADA[2] and parallel provisions of the Texas Labor Code.[3] He further alleged that Artco-Bell had violated both statutes by failing to make a "reasonable accommodation" that would enable him to remain on the job despite his actual or perceived disability.[4]  Adams also asserted a claim under the workers' compensation act, alleging that Artco-Bell had terminated him in retaliation for filing a workers' compensation claim.  Artco-Bell filed a general denial and, after discovery, moved for summary judgment under the "traditional" standard as to all of Adams's claims and under the "no-evidence" standard as to Adams's workers' compensation retaliation claims.  Following a hearing, the district court granted Artco-Bell's motion in full without stating the grounds on which it relied.  This appeal followed.

---

[1]  Adams claims that Artco-Bell terminated him, while Artco-Bell insists that Adams quit so he could file a social-security disability claim (which, it is undisputed, he successfully did).  Which version of Adams's separation is correct is not at issue on appeal.

[2]  *See* 42 U.S.C.A. § 12101 *et. seq.* (West 2005 & Supp. 2009); *see* Americans with Disabilities Act of 1990, Title I, § 102(a), 104 Stat. 327 (1990) (codified as amended at 42 U.S.C.A. § 12112(a) (West Supp. 2009)).

[3]  *See* Tex. Lab. Code Ann. § 21.051 (West 2006).

[4]  *See* Americans with Disabilities Act of 1990, Title I, § 102(b)(5)(A), 104 Stat. 327 (1990) (codified as amended at 42 U.S.C. A. § 12112(b)(5)(A)); Act of Apr. 25, 1995, 74th Leg., R.S., ch. 76, § 9.05(a), 1995 Tex. Gen. Laws 458, 624 (codified as amended at Tex. Lab. Code Ann. § 21.128 (West Supp. 2009)).

**ANALYSIS**

In a single issue, Adams argues that the district court erred in granting summary judgment on his disability-discrimination and reasonable-accommodation claims. He does not appeal the summary judgment as to his workers' compensation retaliation claims.

We review the district court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the non-movant, indulging every inference and resolving all doubts in the non-movant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. Summary judgment is proper when there are no disputed issues of material facts and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). Where, as here, the trial court does not specify any particular ground on which it relied when granting the motion, we will affirm the judgment on any ground that is meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

Under the "traditional" standard, a defendant seeking summary judgment against a plaintiff's cause of action has the initial burden of either conclusively negating at least one element of that cause of action or conclusively establishing all elements of an affirmative defense. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). If the defendant meets this initial burden, the burden shifts to the plaintiff to present evidence or other grounds for denying summary judgment. *See id.*

3

However, in employment-discrimination cases that have not been fully tried on the merits, we also apply the burden-shifting analysis established by the United States Supreme Court. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).[5] Under this analysis, the plaintiff has the initial burden to present a prima facie case of discrimination. *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex. App.—Fort Worth, 2006, pet. denied). To establish a prima facie case of disability discrimination under the ADA or labor code, a plaintiff must show that (1) he has a "disability," (2) he is "qualified" for the job he seeks, and (3) he suffered an adverse employment decision "because of" his disability. *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996); *Davis*, 188 S.W.3d at 757. The plaintiff can show the "qualification" element in one of two ways: (1) by proving that he can perform all essential job functions with or without modifications or accommodations, or (2) that some reasonable accommodation by the employer would enable him to perform the job. *Turco*, 101 F.3d at 1093; *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 91 (Tex. App.—Austin 1995, no writ). Assuming the plaintiff meets his prima facie burden, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its differential treatment of the employee. *Davis*, 188 S.W.3d at 758. The employer's offer of a legitimate reason eliminates the presumption of

---

[5] The parties agree that the claims Adams asserts under the ADA and labor code's parallel disability-discrimination and reasonable-accommodation provisions are governed by the same substantive and procedural standards in all respects relevant to this case. *See LeBlanc v. Lamar State College*, 232 S.W.3d 294, 299-300 (Tex. App.—Beaumont 2007, no pet.); *Austin State Hosp. v. Kitchen*, 903 S.W.2d 83, 87-88 (Tex. App.—Austin 1995, no writ); *see also Pena v. Houston Lighting & Power Co.*, 978 F. Supp. 694, 697 (S.D. Tex. 1997), *aff'd*, 154 F.3d 267 (5th Cir. 1998).

4

unlawful discrimination created by the plaintiff's prima facie showing and leaves the plaintiff with his ultimate burden to prove that the employer's explanation notwithstanding, it engaged in intentional discrimination. *Id.*

The elements of a "reasonable accommodation" claim overlap the elements of a disability-discrimination claim to some extent. A plaintiff must show that (1) he has a "disability," (2) an employer covered by the statute had notice of his disability, (3) with "reasonable accommodations" he could perform the "essential functions" of his position, and (4) the employer refused to make such accommodations. *See id.*

In its summary-judgment motion, Artco-Bell primarily targeted the overlapping "qualification" elements of Adams's disability-discrimination and reasonable-accommodation claims. Regarding Adams's disability-discrimination claims, Artco-Bell sought to negate Adams's *prima facie* case by presenting summary-judgment evidence to the effect that Adams could not perform the essential functions of his job, with or without reasonable accommodations, once he was permanently restricted by his doctor to "light duty." Further, Artco-Bell urged that this evidence conclusively established that it had a legitimate, non-discriminatory reason for its action—that Adams was not "otherwise qualified" for any available position—and that Adams failed to present evidence raising a fact issue as to whether it intentionally discriminated against him "because of" his disability. As for Adams's accommodation claim, Artco-Bell similarly relied on this evidence in attempting to establish that Adams could not, with any reasonable accommodation, perform the essential functions of his job once he was permanently restricted to light duty. In contending on appeal that the district court erred in granting Artco-Bell's motion, Adams asserts that the summary-

5

judgment evidence raises a fact issue as to whether Adams could have performed the essential functions of his job with reasonable accommodations, whether he was provided those accommodations, and whether for these reasons he rebutted Artco-Bell's explanation for its actions.

To meet its initial summary-judgment burden, Artco-Bell presented evidence detailing the essential functions of Adams's job as "lead person" and the extent to which he was physically capable of performing them. Adams, as noted, worked as a lead person or foreman in Artco-Bell's injection molding department. Within that department, the evidence reflected, were multiple continuously operating machines in which plastic chair components are molded. As a lead person, Adams was charged with supervising three or four operators of the injection-molding machines. Each machine operator, in turn, was charged with operating two of the machines, continuously walking between the machines and removing molded chair backs as they were being continuously produced, placing each chair back in a nearby location, and periodically moving the chair backs from that location to a further location when a stack of five or so chair backs accumulated. Besides lifting and moving chair backs, the operators' roles entailed stooping and bending in operating the machine itself. In addition to supervising his machine operators' performance of these actions, Adams, as lead person, was required to step into the operators' role whenever one took a break or made a restroom trip.

The lead person's role also included changing the color of dye used in the chair molding machines three or four times per day. This entailed retrieving a twenty-five to fifty pound bottle of dye from a storage area, placing it on a car for movement to a machine, moving the dye to the machine, and lifting the bottle to chest height to place the dye in the machine. Also during color

6

changes, the lead person was required to climb stairs to the top of the machine to clean out the machine's "hopper." In addition to these duties, the lead person would assist in repairing machines or changing molds in the machines, which entailed stooping, bending, pushing, lifting, and crouching around the machines, and would deliver materials to and from machines on a forklift.

From the injection molding department, the completed chair backs proceed to subsequent steps in the chair-production process. Consequently, timely and uninterrupted production of chair backs by the department is integral to the entire facility's chair-production process. In fact, according to affidavit testimony Artco-Bell presented from one of Adams's fellow lead persons, the facility's chair production would be impeded by delays as brief as five or ten minutes in the performance of a lead person's job responsibilities in the injection molding department.

Artco-Bell also presented summary-judgment evidence, including medical records, reflecting that Adams had a history of problems with his right knee dating back to at least 1991, when he had arthroscopic surgery on it, and that he had developed a degenerative condition in his knees that had progressively worsened during the intervening years. While at work on July 14, 2004, Adams reported that he heard a ripping or popping in his right knee as he was rising from a bent to a standing position. He was treated at Scott & White in Temple, where he made a series of visits during the ensuing months. A September 2nd "work-related injury report" prepared by Dr. Don A. Mackey reflected that Adams had a degenerative condition in his knees that was aggravated by his job duties. Dr. Mackey placed Adams on two-month temporary restrictions from running, squatting, kneeling, or climbing stairs, steps, and ladders. On a September 10th report, Dr. Mackey added a restriction against prolonged standing. Subsequently, on November 18th, Dr. Mackey continued the

7

temporary restrictions and ordered Adams to return in three months for reevaluation and restriction review. Artco-Bell presented evidence—including Adams's admissions during his deposition—that it made accommodations to Adams's temporary medical restrictions following his July 2004 injury, including allowing Adams to request help from others in performing job tasks when he thought he needed it, having others perform such tasks for him, and taking additional rest breaks when he perceived he needed to.

In January 2005, Adams's knee was sprained or "went out" while he was on the job. He returned to work approximately one week later. On Thursday, February 17th, Adams saw Dr. Mackey again, who at that juncture placed Adams on permanent restriction to "light duty." This restriction differed from those that had previously been imposed on Adams in two important ways. First, the new "light duty" restriction was permanent, not merely temporary. Second, Artco-Bell presented summary-judgment evidence—including Adams's admissions during his deposition—that "light duty" entailed greater limitations on his performance of job functions than did the prior temporary restrictions.

Artco-Bell's proof on this point also included the expert affidavit of Terry L. Vander-Molen, Ph.D., a professional rehabilitation counselor and consultant who described his "entire job every day [a]s determining what jobs a person can perform given their limitations and restrictions." Dr. Vander-Molen opined that "[a] person restricted to light duty could not perform the duties of a lead person as they could not lift, move about, climb, and place themselves in awkward positions to make color changes, repair machinery and/or assist with mold changes as required." Nor, Dr. Vander-Molen added, could a lead person limited to light duty "perform the duties of a

machine operator while the machine operator is on break as these duties require constant motion back and forth between two machines, require the lifting of chair backs, and the transporting of five or more of these chair backs to a trailer for later removal from the machine site." Vander-Molen further opined that "to allow Mr. Adams to continue in his job on a permanent basis, given his permanent restriction to light duty, would have virtually required that another person perform several of the essential functions of his job for him and would have caused Artco-Bell to have two people performing one person's job."

Artco-Bell's summary-judgment evidence satisfied its initial burden of conclusively negating that Adams could perform the essential duties of his job with or without modification or accommodation by Artco-Bell. *See Turco*, 101 F.3d at 1093; *Kitchen*, 903 S.W.2d at 91. It similarly negates whether Artco-Bell could have made any "reasonable accommodation" that would have enabled Adams to perform his essential job functions. *See Davis*, 188 S.W.3d at 758. Artco-Bell's summary-judgment evidence established that, in the words of Dr. Vander-Molen, the modifications necessary to enable Adams to remain a lead person while still accomplishing the essential requirements of that position "would have caused Artco-Bell to have two people performing one job" for as long as Adams worked there. This goes far beyond the "reasonable accommodation" that might be required under the ADA or labor code. *See Grubb v. Southwest Airlines*, 285 Fed. Appx. 383, 389 (5th Cir. 2008); *Burch v. City of Nacogdoches*, 174 F.3d 614, 620-23 (5th Cir. 1999); *Turco*, 101 F.3d at 1094. Consequently, Artco-Bell has conclusively negated the "qualification" elements of both Adams's prima facie disability-discrimination claim and his accommodation claim. *See Turco*, 101 F.3d at 1092; *Davis*, 188 S.W.3d at 757.

9

Adams insists that his response presented fact issues precluding summary judgment. Adams relies on evidence—including his own testimony and that of a co-worker—to the effect that Adams had succeeded in performing his job tasks with little if any assistance during the seven months in which he was under Dr. Mackey's temporary restrictions. Adams reasons that because this evidence tended to prove that he was able to perform his job well during this period with the accommodations made by Artco-Bell (or even unaided), it raised a fact issue as to whether the company could have made similar accommodations to enable Adams to continue working as a lead person after Dr. Mackey permanently restricted him to "light duty" on February 17, 2005. This argument, however, overlooks Artco-Bell's summary-judgment evidence that the new restrictions were more severe than those Dr. Mackey had imposed previously in both their degree of restriction and their permanence. Adams did not controvert that evidence. Nor did Adams controvert Dr. Vander-Molen's testimony as to the extent of job modifications within Artco-Bell's injection molding department that would be required if Adams, permanently restricted to light duty, remained as a lead person. We cannot agree with Adams that evidence regarding his ability to perform a lead person's essential job functions under the more lenient temporary restrictions raises a fact issue as to his ability to perform those functions after he was subsequently restricted permanently to light duty. Nor, importantly, does Adams's evidence regarding accommodations Artco-Bell made for him while under the temporary restrictions establish that those accommodations are *reasonable* accommodations, much less that the same accommodations would be reasonable if imposed permanently. *See Grubb*, 285 Fed. Appx. at 389; *Burch*, 174 F.3d at 620-23; *Turco*, 101 F.3d at 1094.

We conclude that the district court did not err in granting summary judgment on the ground that Adams could not prove the qualification elements of his disability-discrimination and accommodation claims. Accordingly, we overrule Adams's issue. Because this ruling forecloses the appellate relief Adams seeks, we do not reach other arguments the parties assert. *See* Tex. R. App. P. 47.1.

## CONCLUSION

Having overruled Adams's issue on appeal, we affirm the district court's judgment.

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: April 14, 2010

11