# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 24, 2021

Lyle W. Cayce
Clerk

No. 20-10295

Jay Weber,

*Plaintiff—Appellant*,

*versus*

BNSF Railway Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:18-CV-367

Before Dennis, Higginson, and Willett, *Circuit Judges*.
Don R. Willett, *Circuit Judge*:

BNSF Railway Company terminated Jay Weber, a train dispatcher, after he violated company attendance guidelines. Weber, who is epileptic, sued, alleging that BNSF failed to provide reasonable accommodations for his disability. The district court granted summary judgment in favor of BNSF, and we affirm.

No. 20-10295

I

We provide a general background on BNSF's attendance guidelines and procedures before discussing the relevant facts.

A

BNSF's train dispatchers are responsible for providing the safe and efficient movement of trains over an assigned dispatching district. Given the nature of these responsibilities, the train dispatcher position is deemed a safety-sensitive position.

Since 2002, BNSF has maintained written employee attendance guidelines. These guidelines prohibit "excessive absenteeism." An "incident of absenteeism" includes "any non-recognized absence from work including, but not limited to, laying off sick without justifiable reason, pattern layoffs, sporadic absences, tardiness or leaving work early, etc." Absenteeism is deemed "excessive when an individual's incidents of absenteeism disrupt[] the regular working schedule of dispatchers in their assigned office."

If an employee needs to be absent from work—but wishes to comply with the attendance guidelines—the employee may take medical leave, vacation, or personal leave, as provided for in the guidelines. BNSF also maintains an "extra board" of employees, whom BNSF can call upon to fill a vacancy when a dispatcher is absent from work.

Each month, BNSF management reviews a train dispatcher's attendance record to determine the number of absences during the prior year. If a dispatcher has unexcused absences and management decides to take disciplinary action, BNSF notifies the dispatcher and conducts a hearing about the potential attendance guidelines violation. After the hearing, BNSF may (or may not) discipline the dispatcher based on its progressive policy,

under which the seriousness of the disciplinary measure increases as the number of attendance violations increases.

## B

Jay Weber started at BNSF in 1981 and worked as a train dispatcher from 1989 until his termination in 2016. During his long tenure at BNSF, Weber violated the attendance guidelines many times. BNSF disciplined Weber for some violations, while exercising "leniency" on many other occasions. In 2014, Bobby Pechal, BNSF's new General Director of Transportation Support, implemented a new enforcement strategy, determining that all train dispatchers, including Weber, should be treated fairly and consistently under BNSF's attendance guidelines and thus be held accountable for violations.

In April 2015, Weber, who had been diagnosed with a brain tumor in 2009, had a seizure, was diagnosed with epilepsy, and entered an epilepsy monitoring facility for in-patient care. Weber's neurologist informed BNSF that Weber could not safely perform his train dispatcher job. BNSF placed Weber on a medical leave of absence for three months, from late April to late July. A few days after he was placed on leave, Weber spoke with Sterling Barker, BNSF's Director of Scheduling, and requested to be reassigned to the Assistant Chief Dispatcher position (ACD), a non-safety sensitive position for which he had been cleared to work. Weber says that Barker denied his request, "stating that no ACD position was available." Weber also claims that he spoke with other BNSF supervisors about being reassigned to a non-safety sensitive position.

After Weber was cleared to safely resume his train dispatcher duties, he says that he discussed with his supervisors his need for two accommodations for his disability. First, he needed to attend doctor visits to monitor his epilepsy and to maintain his job at BNSF. Second, based on his

neurologist's advice, he needed to be able to take off days when he had experienced "triggering events" that might increase the risk of seizure, such sleeping fewer than four hours.

Weber had several absences in 2015 that violated BNSF's attendance guidelines. BNSF management exercised leniency toward Weber for these 2015 violations; however, they gave Weber notice that he was being assessed for a one-year review period beginning in December 2015 and that any future attendance guidelines violations "could result in further disciplinary action."

In the first three months of 2016, Weber had five unexcused absences: January 20 (sleep deprivation); January 29 (neurologist appointment); February 9 (sleep deprivation); March 4 (neurosurgeon appointment); and March 11 (colonoscopy procedure). BNSF management notified Weber that it was conducting investigations regarding his January, February, and March 2016 absences; at each hearing, BNSF disciplined Weber for excessive absenteeism. BNSF terminated Weber on May 18, 2016.

Weber sued BNSF under the Americans with Disabilities Act, Rehabilitation Act, Texas Labor Code, Family and Medical Leave Act, and Federal Railroad Safety Act, asserting claims of disability discrimination, failure to accommodate, interference, retaliation, and denial of medical leave. The only claims relevant to this appeal are Weber's two failure-to-accommodate claims: the first based on BNSF's failure to reassign him as an ACD in 2015; and the second based on BNSF's failure to provide him with a medical leave of absence in 2016.[1] The district court granted summary judgment for BNSF, determining that the evidence raised no dispute of fact

---

[1] Weber withdrew his disability discrimination and FMLA retaliation claims, and he does not challenge the district court's grant of summary judgment in BNSF's favor on any of the other claims.

No. 20-10295

and Weber failed to show that he was a "qualified individual with a disability." Weber timely appealed.

## II

We review summary judgment de novo, "applying the same standard as the district court."[2] Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] We view "all facts and evidence in the light most favorable to the non-moving party."[4] But "where the non-movant is the party who would have the burden of proof at trial, that party must point to evidence supporting [his] claim that raises a genuine issue of material fact."[5]

## III

Both of Weber's failure-to-accommodate claims—the sole claims on appeal—concern the same issue: whether Weber is a "qualified individual with a disability." Before addressing the parties' arguments for each claim, we provide background on the failure-to-accommodate claim and what Weber must show to survive summary judgment.

A failure-to-accommodate claim requires a showing that: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the

---

[2] *SCA Promotions, Inc. v. Yahoo!, Inc.*, 868 F.3d 378, 381 (5th Cir. 2017) (quoting *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001)).

[3] Fed. R. Civ. P. 56(a).

[4] *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013) (citation omitted).

[5] *Moss v. Harris Cty. Constable Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017) (citation omitted).

No. 20-10295

employer failed to make reasonable accommodations for such known limitations."[6] We only address the first element because it is a threshold determination.[7] If Weber is not a qualified individual, our inquiry ends.

The parties do not dispute that Weber has a disability. Instead, the debate centers on whether Weber is a qualified individual. A qualified individual is one, "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[8] Whether Weber is a qualified individual thus depends on his ability to perform the "essential functions" of his job, with or without "reasonable accommodations."[9] Regulations define essential functions as "the fundamental job duties of the employment position the individual with a disability holds or desires."[10] And the ADA defines reasonable accommodations as "job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations."[11]

So, to avoid summary judgment on the qualified-individual issue, Weber must show either (1) that "he could perform the essential functions of his job in spite of his disability" or (2) "that a reasonable accommodation of his disability would have enabled him to perform the essential functions of

---

[6] *Credeur v. Louisiana*, 860 F.3d 785, 792 (5th Cir. 2017) (internal quotation marks omitted).

[7] *Id.*

[8] 42 U.S.C. § 12111(8).

[9] *See Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir. 1996).

[10] 29 C.F.R. § 1630.2(n)(1).

[11] 42 U.S.C. § 12111(9)(B).

the job."[12] Weber fails to make this showing for either of his failure-to-accommodate claims.

## A

Regarding his 2015 failure-to-accommodate claim, Weber argues that the district court erred because it did not engage in a discussion of the merits of his request to be reassigned to the ACD position. We agree that the district court failed to address whether Weber was a qualified individual with respect to the ACD position. But we affirm on the alternative basis that Weber presents no evidence that this position was available.

The district court mentioned Weber's 2015 and 2016 failure-to-accommodate claims before proceeding to determine that Weber was not a qualified individual for purposes of any failure-to-accommodate claim. But the district court analyzed only the facts related to Weber's 2016 claim— whether he could perform his train dispatcher essential functions with or without reasonable accommodations—and failed to analyze whether Weber could perform the ACD essential functions. BNSF concedes that the district court "could have elaborated on the qualification issue as it pertained specifically to the ACD position." More importantly, the district court's analysis conflicts with the text of the ADA,[13] which defines qualified individual as one, who "with or without reasonable accommodation, can perform the essential functions of the employment position that such

---

[12] *Turco*, 101 F.3d at 1093.

[13] Although Weber brings the 2015 claim under the Rehabilitation Act, the "ADA and the Rehabilitation Act generally are interpreted *in pari materia*," and Congress has instructed courts to construe the statutes to apply the same standards. *Frame v. City of Arlington*, 657 F.3d 215, 223–24 (5th Cir. 2011) (en banc) (citations omitted).

No. 20-10295

individual holds or *desires*."[14] Thus, the district court erred because it did not determine whether Weber was a qualified individual for purposes of the ACD position that he desired to hold.

Although the district court erred, we may affirm summary judgment "on any ground supported by the record, including one not reached by the district court."[15] BNSF offers several alternative grounds for affirming.[16] We agree that summary judgment for BNSF should be affirmed because Weber presents no evidence that the ACD position was available or that he was qualified for that position.

Weber can establish that he is a qualified individual—and thus defeat summary judgment—if he can show "that a reasonable accommodation of his disability would have enabled him to perform the essential functions of the job."[17] Reassignment may be a reasonable accommodation, but Weber "bears the burden of proving that an available position exists that he was qualified for and could, with reasonable accommodations, perform."[18] Weber must offer evidence "showing that any of the requested positions are, or were, available" and showing that "he possesses the requisite skill, experience, education, and other job-related requirements to qualify for these positions."[19] Viewing the facts in the light most favorable to Weber, Weber

---

[14] 42 U.S.C. § 12111(8) (emphasis added).

[15] *Gilbert v. Donahue*, 751 F.3d 303, 311 (5th Cir. 2014) (quotation omitted).

[16] Because we affirm on the grounds that Weber presents no evidence that BNSF had any available ACD positions, we do not address BNSF's alternative grounds for affirming the district court.

[17] *Turco*, 101 F.3d at 1093.

[18] *Moss*, 851 F.3d at 418 (citations omitted).

[19] *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997). *See also Burch v. City of Nacogdoches*, 174 F.3d 615, 622 (5th Cir. 1999) ("[T]he law requires [the plaintiff] also to prove that he is qualified for that [requested

No. 20-10295

asked his supervisor about the ACD position, he was denied that position, and he had subsequent conversations with other BNSF supervisors about not being assigned to the position. But Weber presents no evidence that the ACD position was vacant. And he presents no evidence that he had the requisite qualifications for that position. Thus, Weber fails to bear his burden of showing that he was a qualified individual as to the 2015 claim. Summary judgment in favor of BNSF was thus appropriate on this basis.

B

Regarding his 2016 failure-to-accommodate claim, Weber argues that the district court erred when it found that he was not a qualified individual because he could not perform an essential function of his train dispatcher job—regular worksite attendance—with or without reasonable accommodations. Weber claims that regular worksite attendance is not an essential job function because "BNSF granted [him] managerial leniency numerous times," and this practice belies BNSF's judgment that regular attendance was essential.

We disagree. We have observed that "there is a general consensus among courts, including ours, that regular work-site attendance is an essential function of most jobs."[20] To determine whether a function is essential, we look to several factors, such as the "employer's judgment as to which functions are essential" and "the consequences of not requiring the

---

reassignment] position."); *Gonzales v. City of New Braunfels*, 176 F.3d 834, 839 (5th Cir. 1999) (plaintiff "must first satisfy his burden of proving that he is qualified, with or without reasonable accommodation, for the [desired] job").

[20] *Credeur*, 860 F.3d at 793 (citing *Hypes on Behalf of Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (per curiam) (collecting cases)).

incumbent to perform the function."[21] The text of the ADA[22] and its regulations[23] require us to "give greatest weight" to the "employer's judgment" factor, though we must "evaluate the employer's words alongside its policies and practices."[24]

Pechal, BNSF's General Director of Transportation Support from 2014–2018, stated in his declaration that regular attendance is an essential function of the train dispatcher position. Plus, BNSF's longstanding, written attendance policy supports his assertion: The guidelines explicitly provide that "regular, punctual attendance at work" is a "basic condition[] of employment" and outline the disciplinary consequences that result from an employee's excessive absenteeism. Other factors also indicate that regular attendance is an essential function of being a train dispatcher. For example, the "consequences" factor supports our determination that regular worksite attendance is an essential function because, if a train dispatcher does not show up to work, then BNSF must provide coverage to fill that vacancy.[25] Therefore, BNSF's judgment, its attendance policy, additional factors, and our precedent all support our determination that regular workplace attendance was an essential function of Weber's train dispatcher position.

Weber presents several counterarguments, but each lacks merit. First, citing our decision in *Carmona v. Southwest Airlines Company*, Weber argues that regular attendance may not be an essential job function when an

---

[21] 29 C.F.R. § 1630.2(n)(3)(i)–(vii).

[22] 42 U.S.C. § 12111(8) ("[C]onsideration *shall* be given to the employer's judgment as to what functions of a job are essential.") (emphasis added).

[23] 29 C.F.R. § 1630.2(n)(3)(i).

[24] *Credeur*, 860 F.3d at 792, 794 (citation omitted).

[25] 29 C.F.R. § 1630.2(n)(iv) ("consequences of not requiring the incumbent to perform the function").

No. 20-10295

employer grants employees frequent leave.[26] Weber's reliance on *Carmona* is misplaced. Unlike the "extremely lenient" attendance policy in *Carmona*, BNSF maintains and enforces a strict written attendance policy with progressive disciplinary measures.[27] Weber also claims that "BNSF granted [him] managerial leniency numerous times but then 'fast-tracked' his discipline." While Weber certainly had been shown managerial leniency on past occasions, BNSF notified Weber *before* the five incidents of absenteeism for which he was disciplined—and ultimately terminated—that he was being assessed for a one-year period and that any future attendance guidelines violations "could result in further disciplinary action." This argument thus fails.

Second, Weber argues that, with his proposed reasonable accommodations—medical leave to attend "mandatory follow-up doctors' appointments" and excused absences when "he became sleep-deprived and was a risk to safety"—he could have performed the essential functions of his job, including regular attendance. But Weber does not support this argument with any Fifth Circuit caselaw. Weber also emphasizes that he was terminated for a "handful of absences" and alleges that BNSF could have reasonably accommodated these absences because BNSF maintains an extra board to fill in employee vacancies. Assuming Weber's proposed accommodations were reasonable, they would not enable him to perform the essential function of *regular* attendance. Neither Weber nor BNSF could determine in advance how often Weber would become sleep-deprived (i.e. how often he would sleep fewer than four hours) and would need to take medical leave. Because Weber cannot show "that a reasonable

---

[26] 604 F.3d 848 (5th Cir. 2010).

[27] *Id.* at 860.

accommodation of his disability would have enabled him to perform the essential functions of the job," he fails to show that he is a qualified individual.[28]

Finally, Weber argues that BNSF cannot invoke the "undue hardship" exception to an employer's obligation to provide reasonable accommodations and that BNSF had a duty to engage in the interactive process with Weber but failed to do so. Both of these arguments concern other elements of a failure-to-accommodate claim. We need not address these arguments because Weber fails to make the threshold showing that he is a qualified individual for purposes of his 2016 failure-to-accommodate claim.[29]

Because Weber fails to show that he could perform the essential functions of his train dispatcher position, with or without reasonable accommodations, he is not a qualified individual with a disability, and summary judgment for BNSF on the 2016 failure-to-accommodate claim was appropriate.[30]

IV

For the reasons above, we AFFIRM summary judgment in BNSF's favor on both Weber's 2015 and 2016 failure-to-accommodate claims.

---

[28] *Turco*, 101 F.3d at 1093.

[29] *See Credeur*, 860 F.3d at 792.

[30] Because we affirm the district court on its stated grounds, we do not address BNSF's alternative grounds for affirming the district court.