ACCEPTED
03-16-00548-CV
13131223
THIRD COURT OF APPEALS
AUSTIN, TEXAS
10/7/2016 3:13:56 PM
JEFFREY D. KYLE
CLERK

No. 03-16-00548-CV

_____

COURT OF APPEALS
THIRD DISTRICT OF TEXAS

_____

TEXAS STATE UNIVERSITY,
Appellant

v.

DR. KATHLEEN QUINN,
Appellee

_____

On Appeal from the 26th Judicial District Court of Williamson County, Texas
Cause No. 14-1061-C26

_____

**BRIEF OF APPELLANT**

_____

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
DEPUTY FIRST ASSISTANT
ATTORNEY GENERAL

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

ENRIQUE M. VARELA
Assistant Attorney General
Texas Bar No. 24043971
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 (FAX)
Enrique.varela@texas.oag.gov

ATTORNEYS FOR APPELLANT
**ORAL ARGUMENT REQUESTED**
October 7, 2016

# IDENTITY OF PARTIES AND COUNSEL

Pursuant to Rule 38.1(a) of the Texas Rules of Appellate Procedure, Appellee herein provides this Court with the following list of parties and the names and addresses of all trial and appellate counsel:

| | |
|---|---|
| *Defendant-Appellant:* | Texas State University ("TXST") |
| *Trial & Appellate Attorney for* | Enrique M. Varela |
| *Defendant-Appellant:* | Texas Bar No. 24043971 |
| | Assistant Attorney General |
| | Office of the Attorney General |
| | General Litigation Division |
| | P.O. Box 12548, Capitol Station |
| | Austin, Texas 78711-2548 |
| | Enrique.varela@oag.texas.gov |
| | PHONE: (512) 463-2120 |
| | FAX: (512) 320-0667 |
| | |
| *Plaintiff-Appellee:* | Dr. Kathleen Quinn |
| *Trial & Appellate Attorney for* | Colin Walsh |
| *Plaintiff-Appellee:* | Rob Wiley, P.C. |
| | 1011 San Jacinto Blvd., Suite 401 |
| | Austin, Texas 78701 |
| | cwalsh@robwiley.com |
| | intake@robwiley.com |
| | PHONE: (512) 271-5527 |
| | FAX: (512) 287-3084 |

i

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................... i

TABLE OF CONTENTS .................................................................................... ii

INDEX OF AUTHORITIES .............................................................................. ii

STATEMENT OF THE CASE ........................................................................... vi

STATEMENT REGARDING ORAL ARGUMENT ........................................ vi

ISSUED PRESENTED ...................................................................................... vi

    I.   Whether the Trial Court Erred by Denying TXST's Plea to the Jurisdiction When Quinn Failed to Establish the Required Prima Facie Elements of her Age and Disability Discrimination and Retaliation Claims Regarding the Non-issuance of a new Emergency-Hire Contract. ...................................... vi

    II.  Whether the Trial Court Erred by Denying TXST's Plea to the Jurisdiction Because Quinn Failed to Establish a Prima Facie Case of Failure to Hire Based on Age and Disability Discrimination Pertaining to the Associate Clinical Professor Job Posting (Job Posting 2013-55). ............................... vii

    III. Whether the Trial Court Erred by Denying TXST's Plea to the Jurisdiction regarding Quinn's Retaliation Claim pertaining to Job Posting 2013-55 Because she Cannot Establish the Requisite Causation Element ............... viii

STATEMENT OF THE FACTS ..........................................................................1

    a.  A Search Committee was assembled for Job Posting 2013-55 ........................5

    b.  The candidates submitted their materials for consideration ...........................5

SUMMARY OF ARGUMENT ...........................................................................8

ARGUMENT .......................................................................................................9

    A. Standard of Review ....................................................................................9

    B. The Waiver of Sovereign Immunity under the TCHRA is Limited and Quinn

    Failed to State a Claim for Conduct That Invoked That Waiver ..................10

C.  The Trial Court Erred by Denying TXST's Plea to the Jurisdiction Because Quinn Failed to Establish Required Elements of her Age and Disability Discrimination and Retaliation Claims Regarding the Non issuance of an Emergency-Hire Contract. ................................................................................12

    1.    Quinn failed to show that she was replaced by anyone younger or that the reason for nonrenewal was because of her disability. .............................12

      i.    No one replaced Quinn. .........................................................................13

      ii.   A new emergency-hire contract was not issued because the work was complete not because of Quinn's alleged disability. .....................................14

    2.    Quinn's claim based on the non-issuance of a new emergency hire contract is actually a failure to hire claim which fails as one of the required elements of a prima facie case of age and disability discrimination is not established. ...........................................................16

    3.    Since Quinn was hired under a term contract with a beginning and ending date, Quinn suffered no adverse employment decision, therefore she did not establish a prima facie disability or retaliation claim as a matter of law. ..........................................................................................................18

      i.    Guidance from other courts throughout the Country. ............................20

    4.    On August 2, 2012, Quinn learned that her last emergency-hire contract expired at the end of May 2013, which marks the date she learned the contract would not be renewed and therefore fails the "but for" test for retaliation.. (CR 182-183). ......................................................................21

D.  The Trial Court Erred by Denying TXST's Plea to the Jurisdiction Because Quinn Failed to Establish a Prima Facie Failure to Hire Case Based on Age and Disability Discrimination Pertaining to Associate Clinical Professor Job Posting (Job Posting 2013-55) ...................................................................22

    1.    Quinn did not show that she was qualified for Job Posting 2013-55 because her self-serving conclusory statements did not support a prima facie case of discrimination. ...............................................................23

      i.    TXST determined that Quinn did not meet the objective requirements of

Job Posting 2013-55.. .................................................................24

2.     Quinn failed to establish a prima facie case that she did not get an interview for Job Posting 2013-55 because of her disability. ..................27

3.     There are no facts pled or jurisdictional evidence produced showing that the search committee determined not to interview Quinn because of her disability. .......................................................................................29

4.     The Jurisdictional evidence shows that Quinn never informed anyone at TXST of a disability that affected her ability to perform her job, so the decision not to interview Quinn for Job Posting 2013-55 was not because of her alleged disability. ...........................................................30

E.  Whether the Trial Court Erred by Denying TXST's Plea to the Jurisdiction regarding Quinn's Retaliation Claim pertaining to Job Posting 2013-55 Because she Cannot Establish the Requisite Causation Element. .................34

PRAYER ..................................................................................................36

CERTIFICATE OF SERVICE ...................................................................38

CERTIFICATE OF COMPLIANCE ...........................................................38

# INDEX OF AUTHORITIES

**Cases**

*Allied Chem. Corp. v. DeHaven*, 752 S.W.2d 155 (Tex. App.—
Houston [14th Dist.] 1988, writ denied) ............................................................15

*Anderson v. Houston Cmty Coll. Sys*, 458 S.W.3d 633 (Tex. App.—
Houston [1st Dist.] 2015, no pet.) ......................................................................11

*Anderson v. Snider*, 808 S.W.2d 54 (Tex. 1991) (op. on reh'g) .............................15

*Artco-Bell Corporation,* No. 03-08-000690-CV, 2010 Tex. App.
LEXIS 2774, 2010 WL 1507796 (Tex.App. —Austin 2010, no pet.)................13

*Bajalo v. Northwestern Univ.*, 369 Ill. App. 3d 576 (2006) ...................................20

*Beebe v. City of San Antonio,* No. 04-13-00134-CV, 2014 Tex. App.
LEXIS 10120 (Tex. App. San Antonio Sept. 10, 2014, no pet.)........................23

*Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997) .........................................31

*Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ........................19

*Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802 (Tex. App.—
Houston [1st Dist.] 2012, pet. ref'd) ..................................................................35

*Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785 (Tex.
App.—Houston [14th Dist.] 1990, writ denied)..................................................16

*Creedmoor-Maha*, 307 S.W.3d 505 (Tex. App.—Austin, 2010, no pet.
h.) ........................................................................................................................10

*Crutcher v. Dallas Indep. Sch. Dist.,* 410 S.W.3d 487 (Tex. App.—
Dallas 2013, no pet.)...........................................................................................18

*Daly v. Exxon Corp.*, 55 Ca. App. 4th 46 (1997)...................................................20

*Davis v. City of Grapevine*, 188 S.W.3d 748 (Tex.App.—Fort Worth,
2006, pet. denied) ..................................................................................... 13, 28, 32

Delaware State College v. *Ricks*, 101 S.Ct. 498 (1980) ...........................................22

*Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629 (Tex. 1995)..............................35

*Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)................................................................18

*E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462 (5th Cir. 2009) ........................33

*Equal Employment Opportunity Comm'n v. Omni Hotels Mgmt. Corp.*, 516 F.Supp.2d 678 (N.D. Tex. 2007).........................................34

*Fulenwider v. City of Teague*, 680 S.W.2d 582 (Tex. App.—Waco 1984, no writ) ................................................................................15

*Gee v. Principi*, 289 F.3d 342 (5th Cir. 2002)........................................................35

*Harley-Davidson Motor Co. v. Young*, 720 S.W.2d 211 (Tex. App.— Houston [14th Dist.] 1986, no writ) .................................................15

*Hix v. Tuloso-Midway Indep. Sch. Dist.*, 489 S.W.2d 706 (Tex. Ct. App.—Corpus Christi 1972, writ ref'd n.r.e.)........................................20

*Jaso v. Travis Cnty. Juvenile Bd.*, 6 S.W.3d 324 (Tex. App.—Austin 1999, no pet.))................................................................................24

*Johnson v. Louisiana,* 351 F.3d. 616 (5th Cir. 2003) ...............................................27

*Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731 (5th Cir. 1999)...................................32

*Markwell v. Culwell*, 515 F.2d 1258, (5th Cir. 1975) (per curiam).........................19

*Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922 (Tex. 1998), *cert. denied,* 526 U.S. 1144 (1999)..............................................................9

*McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548 (Tex. App.— Dallas 2006, no pet.).................................................................... 23, 24

*Medina v. Ramsey Steel Co.*, 238 F.3d 674 (5th Cir. 2001) ...................................34

*Mercer v. Daoran Corp.*, 676 S.W.2d 580 (Tex. 1984) ..........................................15

*Mesquite Indep. School Dist. v. Mendoza*, 441 S.W.3d 340 (Tex. App.—Dallas 2013, no pet. h.)................................................................11

*Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629 (Tex. 2012) .......................................................................................... passim

*Moini v. Univ. of Tex. at Austin*, 832 F. Supp. 2d 710 (W.D. Tex. 2011)..............................................................................................19

*Motevalli v. Los Angeles Unified School District*, 122 Cal. App. 4th 97 (2004)...........................................................................................20

Nunez *v. Simms*, 341 F.3d 385 (5th Cir. 2003)....................................19

*Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483 (5th Cir. 2004) ........................18

*Price v. Litton Business Sys., Inc.*, 694 F.2d 963 (4th Cir.1982)) ..........................22

*Querner Truck Lines, Inc. v. Alta Verde Indus.*, 747 S.W.2d 464 (Tex. App.—San Antonio 1988, no writ) ...................................................15

*Riel v. Electronic Data Systems Corp.*, 99 F.3d 678 (5th Cir. 1996) ......................33

*Rizkallah v. Conner*, 952 S.W.2d 580, (Tex. App.—Houston [1st Dist.] 1997, no writ) ...........................................................................16

*Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) .................................................................23

*Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490 (1996) .......................22

*State v. Lueck*, 290 S.W.3d 876 (Tex. 2008) ............................... 10, 11, 14

*Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155 (5th Cir. 1996) (emphasis added) ................................................................... 31, 32

*Tex. Assn. of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440 (Tex. 1993).................................................................................................10

*Tex. Dep't of Crim. Justice v. Cooke*, 149 S.W.3d 700 (Tex. App.—Austin 2004, no pet.) .....................................................................11

iv

*Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583 (Tex. 2001)..........................11

*Tex. Dep't of Parks Wildlife v. Miranda,* 133 S.W.3d 217 (Tex. 2004)..... 10, 14, 15

*Tex. HHS Comm'n v. Baldonado*, No. 13-14-00113-CV, 2015 Tex. App. LEXIS 4375 (Tex. App.—Corpus Christi Apr. 30, 2015, no pet.) .......................................................................................... 17, 23

*Tex. Natural Res. Conservation Comm'n. v. IT-Davy,* 74 S.W.3d 849 (Tex. 2002) .......................................................................................9

*Tex. Natural Res. Conservation Comm'n v. McDill*, 914 S.W.2d 718 (Tex. App.—Austin 1996, no writ) ..................................................35

*Tex. State Office of Admin. Hearings v. Birch*, 2013 WL 3874473 (Tex. App.—San Antonio 2013, pet. denied) (unpub.).........................................11

*Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090 (5th Cir. 1996)............. 13, 28, 32

*Wells v. Board of Trustees of California State University*, 393 F.Supp.2d 990, (N.D. Cal 2005)..........................................................................20

**Statutes**

42 U.S.C.A. § 12111(9)(2009)...............................................................................33

TEX. LAB. CODE § 21 et seq................................................................... 1, 8, 18, 31

**STATEMENT OF THE CASE**

*Nature of the Case:*    This is an employment law case. Plaintiff Quinn filed an age and disability discrimination as well as a retaliation claim pursuant to Chapter 21 of the Texas Labor Code. (CR 29-41).

*Trial Court:*    26th Judicial District Court of Williamson County, Texas.

*Trial Court Disposition:*    The trial court denied Defendant TXST's plea to the jurisdiction. (CR 883).

*Parties Below:*    Texas State University, Defendant and Kathleen Quinn, Plaintiff.

**STATEMENT REGARDING ORAL ARGUMENT**

Appellant respectfully requests that the Court grant oral argument in this matter, as the issues in this case are complex and of significant import to the State.

Further, Appellant believes that argument will assist the Court in evaluating the issues raised in this appeal.

**ISSUED PRESENTED**

I.    **Whether the Trial Court Erred by Denying TXST's Plea to the Jurisdiction When Quinn Failed to Establish the Required Prima Facie Elements of her Age and Disability Discrimination and Retaliation Claims Regarding the Non-issuance of a new Emergency-Hire Contract.**

1.    *Quinn failed to show that she was replaced by anyone younger or that the reason for not issuing a new emergency hire contract was because of her disability.*

2.    *Quinn's claim based on the non-issuance of a new emergency-hire contract is actually a failure to hire claim which fails as she did not establish a required element of a prima facie case for age and disability discrimination.*

3.  *Since this was a term contract with a beginning and ending date, Quinn suffered no adverse employment decision, therefore she did not establish a prima facie disability or retaliation claim as a matter of law.*

4.  *On August 2, 2012, Quinn learned that her last emergency-hire contract expired at the end of May 31, 2013, which marks the date she learned the contract would not be renewed.*

**II.  Whether the Trial Court Erred by Denying TXST's Plea to the Jurisdiction Because Quinn Failed to Establish a Prima Facie Case of Failure to Hire Based on Age and Disability Discrimination Pertaining to the Associate Clinical Professor Job Posting (Job Posting 2013-55).**

1.  *Quinn did not meet her burden that she was qualified for Job Posting 2013-55 because her self-serving conclusory statements did not support a prima facie case of discrimination.*

    i.  *Quinn did not meet the five-year clinical experience requirement listed in Job Posting 2013-55*

2.  *Quinn failed to establish a prima facie case that she did not get an interview for Job Posting 2013-55 because of her disability.*

3.  *There are no facts pled or jurisdictional facts produced showing that the search committee decided not to interview Quinn because of her disability.*

4.  *The jurisdictional evidence shows that Quinn never informed anyone at TXST of a disability that affected her ability to perform her job, so the decision not to interview Quinn for Job Posting 2013-55 was not because of her alleged disability.*

**III.** **Whether the Trial Court Erred by Denying TXST's Plea to the Jurisdiction regarding Quinn's Retaliation Claim pertaining to Job Posting 2013-55 Because she Cannot Establish the Requisite Causation Element.**

No. 03-16-00548-CV
_____

COURT OF APPEALS
THIRD DISTRICT OF TEXAS
_____


TEXAS STATE UNIVERSITY,
Appellant

v.

DR. KATHLEEN QUINN,
Appellee
_____

On Appeal from the 26th Judicial District Court of Williamson County, Texas
Cause No. 14-1061-C26

_____

**BRIEF OF APPELLANT**

TO THE HONORABLE COURT OF APPEALS:

Texas State University ("TXST") files this brief requesting that this Court
reverse the lower court's denial of TXST's plea to the jurisdiction and render an
order granting TXST's plea to the jurisdiction on all counts.

**STATEMENT OF THE FACTS**

The Appellee, Kathleen Quinn ("Appellee" or "Quinn"), sued TXST for
discrimination based on age and disability as well as retaliation pursuant to
Chapter 21 of the Texas Labor Code. (CR 29-41). The trial court erred when it
denied Appellant TXST's plea to the jurisdiction because the trial court lacked

1

jurisdiction over Quinn's claims. Quinn failed to demonstrate a waiver of TXST's sovereign immunity under the Texas Commission on Human Rights Act ("TCHRA" or "Texas Labor Code") because she did not establish a prima facie case of discrimination or retaliation. Accordingly, for the reasons stated below and based on the facts pleaded and jurisdictional evidence submitted, this Court should reverse the trial court's ruling and render an order granting TXST's plea to the jurisdiction.

In 2011, TXST's St. David's School of Nursing, was in the process of developing a Doctoral of Nursing Practice program. At the time of Quinn's initial employment inquiry, TXST had several vacant positions. (CR 91-93). Because time was of the essence and the regular process of hiring a faculty member was—and still is—a lengthy one, TXST offered Quinn a nine-month (academic year) "emergency hire" position beginning on September 1, 2011. (CR 92). Indeed, TXST hired Quinn from September 1, 2011 until May 31, 2012 as an "emergency hire" Clinical Associate Professor in the St. David's School of Nursing. (CR 172-174). Quinn's supervisor was Dr. Marla Erbin-Roesemann. (CR 175-180).

An "emergency hire" is a designation given to employees when there is typically not enough time between the time of application and the time needed to begin performing the job functions and duties, which was the case here. (CR 175-

2

180).

Throughout this lawsuit, Quinn erroneously believes—without any evidence other than her incorrect conclusion—that a candidate for an emergency hire is required to have five (5) years of clinical experience. Cite to record. However, this is absolutely incorrect. (CR 175-180). There is no public posting for an emergency hire that requires such experience. (CR 175-180). Instead, TXST's critical need for faculty to teach students takes primacy over the requirements set out for non-emergency hire positions.

In the fall of 2011, when Quinn began as an emergency hire, she was assigned to teach five nursing courses. (CR 175-180). Shortly after the beginning of that semester, it became apparent that her skills were better suited for program development. (CR 175-180). Therefore, Quinn was asked to assist in developing a Master of Science in Nursing-Family Nurse Practitioner (MSN-FNP) graduate program. (CR 175-180). At the end of Quinn's first nine-month employment contract, the MSN-FNP program was not completed, therefore, TXST offered her another nine-month "emergency hire" contract to continue and complete the work. (CR 175-180). Because Quinn's work was now primarily program development of the MSN-FNP program, for the spring 2012 semester, her teaching assignment was greatly reduced. (CR 175-180). Then, in the fall of 2012 and spring of 2013,

Quinn's sole focus was program development for the MSN-FNP program and she taught no nursing courses. (CR 175-180).

On or about April 2013, Quinn applied for the Clinical Assistant/Associate Professor Job Posting 2013-55 ("Job Posting 2013-55"). (CR 175-180). In that job posting, TXST sought a clinical Assistant/Associate Professor who would be assigned to teach in the *undergraduate* program. (CR 175-180). This was not a job teaching in the graduate program or any program Quinn took any part in developing. (CR 175-180). Quinn never applied for any Clinical Assistant/Associate Professor position that would be assigned to teach in the *graduate* program, as she mistakenly believes. (CR 175-180).

Among other requirements, job posting 2013-55 required at least five (5) years of clinical experience. (CR 175-180; CR 184-186). Clinical experience means full-time, front-line, hands-on patient care. (CR 175-180). Quinn did not provide any statements, indication, nor supporting documentation showing she had five years of clinical nursing experience. Because this position required teaching undergraduate nursing students, it was critical that the person filling the position have this clinical nursing experience. (CR 175-180). There is no dispute that Quinn did not have the required clinical nursing experience. (CR 175-180).

4

**a.     A Search Committee was assembled for Job Posting 2013-55.**

In May of 2013, a search committee was assembled for job posting 2013-55, as is customary when filling such faculty positions. That search committee was made up of three individuals whom were faculty members of departments of the College of Health Professionals. (CR 175-180). Those members were: Rhonda Winegar (School of Nursing), Nick Henry (Department of Respiratory Care), and Brandy Wilburn (Department of Radiation Therapy).  However, since Rhonda Winegar, was a member of the St. David's School of Nursing and because Dr. Winegar knew two of the candidates, including Quinn, the Dean of the college, Dr. Ruth Welborn, determined that in order to avoid any implication of biased preference over any candidate, Ms. Sue Biedermann of the Health Information Management Department replaced Dr. Winegar on the search committee. (CR 510-512). The search committee was charged with reviewing all the materials submitted by each candidate to determine which ones qualified under the job posting requirements. Those individuals who qualified, would receive interviews. Out of those individuals interviewed, TXST would eventually hire one.

**b.     The candidates submitted their materials for consideration.**

Each candidate submitted their curriculum vitae ("CV"), the application for job posting 2013-55, a cover letter, and any other information they felt would show

5

they were the best candidate for the job. Cite to record. Quinn, submitted her CV, application, and a cover letter. (CR 440-457).

In looking at Quinn's "CV", Quinn became a registered nurse ("RN") in Texas in 2000. (CR 445-456). Prior to that, Quinn was a psychotherapist. (CR 440-457). Quinn also obtained her RN licenses in Louisiana and Mississippi after 2000 and perhaps as late as 2012. (CR 445-456). However, nothing in her CV demonstrated that she had at least five years of clinical experience as a nurse. The only relevant years would have been the years after she obtained her RN in 2000.

Quinn's documented experience shows that she had experience in program development, teaching, consulting, integrative psychotherapy, and healthcare facility administration. (CR 440-457). The only mention of "clinical experience" appears to be during her employment as a Chief Healthcare Officer and CEO of Discovery Integrative Psychotherapy Centers, where she claims to have had clinical duties. (CR 440-457). However, she failed to identify if those alleged clinical duties involved nursing or psychotherapy, and, importantly, she failed to identify the time period involved in those alleged clinical duties. *See id*. Not surprisingly, having the status of a registered nurse (RN) does not equate to having clinical nursing experience. It is possible to be an RN and not have clinical experience. (CR 175-180). Along with her CV, Quinn submitted a three-page

6

cover letter outlining her qualifications. (CR 198-200). In that three-page cover letter, the word or a form of the word "clinic" is mentioned a total of three times. (CR 198-200). Nothing in the three-page cover letter—including the three references to clinic—indicate that she had at least five years of clinical experience as a nurse. None of the documents Quinn submitted with her application, in response to job posting 2013-55, demonstrate that she had at least five years of clinical experience as a nurse. Her cover letter and CV were the only items Quinn provided to TXST when she applied for the Clinical Assistant/Associate Professor position—a fact Quinn admitted during her sworn deposition. (CR 127).[1]

Ultimately, Quinn and one of her colleagues, who had also applied for this position, did not meet one of the mandatory objective requirements of the job. (CR 214-218). Specifically, neither Quinn nor her colleague had five years of clinical nursing experience and were consequently determined to be ineligible for the position. (CR 214-218). As Quinn did not demonstrate she met of the clinical nursing experience requirement, she was not offered an interview. (CR 175-180). Quinn did not qualify for the job. (CR 202).

On or about May 28, 2013, TXST offered Quinn a short term commitment to last through the summer of 2013 to complete her part of the program development

---

[1] At p. 126, ln. 21-p. 127, ln. 15.

for the Master of Science Program. (CR 203-204). During this short three-month period, Quinn was allowed to work from home. (CR 203-204). In fact, Quinn was also allowed to work from home prior to the summer commitment. (CR 205). The short-term commitment ended on August 31, 2013. (CR 175-180; CR 203-204). In March of 2013, Quinn prematurely requested to work from home should she be hired to teach in the fall of 2013. (CR 119).[2] However, this request was premature as no decision had been made regarding any future teaching position. (CR 175-180). As previously stated, because the terms of the last emergency-hire contract had expired and her part of the program-development work was complete, Quinn was not offered another emergency-hire contract. (CR 175-180).

## SUMMARY OF ARGUMENT

The trial court erred by denying TXST's plea to the jurisdiction because Quinn did not plead facts to establish a prima facie case of discrimination or retaliation. Appellee Quinn cannot cure the deficiency by amending her petition. Therefore, this Court should reverse the trial court and render an order granting TXST's plea to the jurisdiction on all counts.

Quinn alleged discrimination based on age and disability as well as retaliation pursuant to Chapter 21 of the Texas Labor Code. Quinn alleges two distinct adverse employment actions. The first alleged adverse employment action

---

[2] At p. 94, ln. 7-18.

8

is the non-issuance of an emergency hire contract or otherwise stated as her first failure to hire claim. The second alleged adverse employment action is the failure to hire Quinn for a full-time faculty position ("job posting 2013-55).

The trial court erred by denying TXST's plea to the jurisdiction because Quinn failed to establish required elements of her age and disability discrimination and retaliation claims regarding the non-issuance of an emergency-hire contract.

Additionally, the trial court erred by denying TXST's plea to the jurisdiction because Quinn failed to establish a prima facie case of failure to hire based on age and disability discrimination pertaining to the associate clinical professor job posting (Job Posting 2013-55).

Finally, the trial court erred by denying TXST's plea to the jurisdiction regarding Quinn's retaliation claim based on Job Posting 2013-55. This Court should reverse the lower court and render a judgment in TXST's favor.

## ARGUMENT

### A.     Standard of Review

The standard of review of an order granting a plea to the jurisdiction based on governmental immunity is *de novo*. *Tex. Natural Res. Conservation Comm'n. v. IT-Davy,* 74 S.W.3d 849, 855 (Tex. 2002); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998), *cert. denied,* 526 U.S. 1144 (1999).   It is the

9

plaintiff's burden to allege facts that affirmatively establish the trial court's subject matter jurisdiction. *See Tex. Assn. of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). In determining whether the plaintiff has met this burden, the court must accept the allegations in the plaintiff's pleadings as true and construe them in favor of the plaintiff. *See Tex. Dep't of Parks Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex. 2004). If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction should be granted without allowing the plaintiffs an opportunity to amend. *Id.* at 227; *Creedmoor-Maha*, 307 S.W.3d 505, 513 (Tex. App.—Austin, 2010, no pet. h.).

**B.    The Waiver of Sovereign Immunity under the TCHRA is Limited and Quinn Failed to State a Claim for Conduct That Invoked That Waiver**

The TCHRA provides only a limited waiver of sovereign immunity. "Chapter 21 of the Labor Code waives immunity from suit **_only_** when the plaintiff actually states a claim for conduct that would violate the TCHRA." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 637 (Tex. 2012) (emphasis added). A trial court has no jurisdiction over a TCHRA discrimination or retaliation suit against a government employer when the plaintiff fails to allege facts that meet a *prima facie* burden. *Id*. (applying the reasoning in *State v. Lueck* to TCHRA claims); *Mesquite Indep. School Dist. v. Mendoza*, 441 S.W.3d 340

10

(Tex. App.—Dallas 2013, no pet. h.); *Tex. State Office of Admin. Hearings v. Birch*, 2013 WL 3874473 (Tex. App.—San Antonio 2013, pet. denied) (unpub.). Thus, "in a suit against a governmental employer, the prima facie case for a claim under the [TCHRA] implicates both the merits of the claim and the court's jurisdiction because of the doctrine of sovereign immunity." *Anderson v. Houston Cmty Coll. Sys*, 458 S.W.3d 633 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (*citing Mission Consol. Indep. Sch. Dist.,* 372 S.W.3d at 635–36).

Here, Quinn has not stated a claim for conduct that would violate the TCHRA, so her claims cannot fall within the limited waiver provision. When a suit alleging claims under the TCHRA is brought against a governmental entity, the court must consider the particular facts of the case to determine whether the claims come within the scope of the TCHRA waiver of immunity. *Tex. Dep't of Crim. Justice v. Cooke*, 149 S.W.3d 700, 704 (Tex. App.—Austin 2004, no pet.) (*citing Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001)). A conclusory allegation in the petition that the governmental entity has violated the TCHRA is insufficient. *See State v. Lueck*, 290 S.W.3d 876, 884 (Tex. 2008)**.**

As illustrated below, Quinn failed to meet her prima facie burden. Therefore, none of Quinn's purported claims fall within this limited waiver of sovereign immunity. Consequently, the trial court erred in denying TXST's Plea to the

11

Jurisdiction concerning Quinn's discrimination and retaliation claim.

**C.** **The Trial Court Erred by Denying TXST's Plea to the Jurisdiction Because Quinn Failed to Establish Required Elements of her Age and Disability Discrimination and Retaliation Claims Regarding the Non issuance of an Emergency-Hire Contract.**

> *1.* *Quinn failed to show that she was replaced by anyone younger or that the reason for nonrenewal was because of her disability.*

As part of her lawsuit, Quinn claimed age and disability discrimination when she was not offered an emergency-hire contract beyond May 31, 2013. (CR 29-41). Here, Quinn cannot establish the prima facie elements. The uncontroverted jurisdictional evidence shows that no one was hired to replace Quinn because the program she was hired to develop was completed. (CR 175-180). Therefore, Quinn failed to establish required elements to prove a prima facie case of discrimination based on age or disability pertaining to the emergency-hire contract claim.

Assuming this Court considers the non-renewal of a term contract under wrongful termination analysis, to establish a prima facie case of age discrimination, a plaintiff must provide evidence that she (1) is a member of a protected class; (2) was qualified for her position; (3) was terminated by her employer; and (4) was replaced by someone younger. *Mission Consol. Indep. Sch. Dist.* 372 S.W.3d 629, 632 (Tex. 2012). Likewise, in order for Quinn to prove a disability claim, she must show that she: (1) has a "disability," (2) she is

12

"qualified" for the job; and (3) she suffered an adverse employment decision because of her disability. *Artco-Bell Corporation,* No. 03-08-000690-CV, 2010 Tex. App. LEXIS 2774, 2010 WL 1507796 (Tex.App. —Austin 2010, no pet.); *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex. App.—Fort Worth, 2006, pet. denied); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996); *Davis*, 188 S.W.3d at 757.

### i.    *No one replaced Quinn.*

With respect to her age claim, Quinn did not and cannot establish the fourth element. That is, Quinn failed to produce any facts or jurisdictional evidence to establish that she was replaced by a younger person. This is because no one replaced her since the work was completed. (CR 175-180). Indeed, Quinn's focus during that contract period was to continue and complete the graduate school program design. (CR 175-180; CR 110[3]). That program was set to start—and started—in the fall of 2013. (CR 175-180). Once Quinn completed the program design, there was no more work for her to perform. (CR 175-180). There was no need for anyone to continue developing a program that had already been developed.

---

[3] At p. 60, ln. 11-13.

13

***ii.   A new emergency-hire contract was not issued because the work was complete not because of Quinn's alleged disability.***

The trial court erred by denying TXST's plea to the jurisdiction relating to Quinn's disability claim regarding the non-issuance of a new emergency-hire contract. Quinn was required to plead facts supporting a prima facie case and she failed to do so. In particular, Quinn failed to plead facts that she suffered an adverse employment action because of her disability. Indeed, the only facts Quinn has pleaded to support this element are conclusory self-serving statements. (CR 29-41; CR 135; CR 237-267). A plaintiff's conclusory allegation that a TCHRA violation has occurred is not sufficient to defeat a plea to the jurisdiction, because "[a]llowing a plaintiff's pleadings to stand on bare allegations, alone, without allowing the State to challenge plaintiff's compliance with [an] immunity statute, would practically eliminate the use of pleas to the jurisdiction, which [courts] have already approved as the proper 'procedural vehicle to challenge subject matter jurisdiction in trial courts for over a century and a half.'" *Lueck*, 290 S.W.3d at 884 (citing *Miranda*, 133 S.W.3d at 232).

When, as here, a plea to the jurisdiction challenges the existence of jurisdictional facts, a trial court's review "mirrors that of a traditional summary judgment motion." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). The trial court must take as true all evidence favorable to the

14

nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Miranda*, 133 S.W.3d at 228. If there is a fact question regarding the jurisdictional issue, the trial court must deny the plea. *Id*. at 227-28. However, if the evidence is undisputed or if the plaintiff failed to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. at 228.

Self-serving statements of an interested witness about what she knew or intended are not readily controvertible and thus are not competent summary judgment evidence. *Allied Chem. Corp. v. DeHaven*, 752 S.W.2d 155, 158 (Tex. App.—Houston [14th Dist.] 1988, writ denied). Unsubstantiated opinions or unilateral and subjective determinations of facts are also incompetent summary judgment evidence. *Querner Truck Lines, Inc. v. Alta Verde Indus.*, 747 S.W.2d 464, 468 (Tex. App.—San Antonio 1988, no writ); *e.g., Harley-Davidson Motor Co. v. Young*, 720 S.W.2d 211, 216 (Tex. App.—Houston [14th Dist.] 1986, no writ); *Fulenwider v. City of Teague*, 680 S.W.2d 582, 584 (Tex. App.—Waco 1984, no writ). Conclusory statements and legal conclusions are incompetent summary judgment evidence. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991) (op. on reh'g); *Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984); *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 787 n.1 (Tex.

15

App.—Houston [14th Dist.] 1990, writ denied); unsubstantiated factual or legal conclusions or subjective beliefs that are not supported by evidence are not competent summary-judgment proof. *See, e.g., Rizkallah v. Conner*, 952 S.W.2d 580, 586-88 (Tex. App.—Houston [1st Dist.] 1997, no writ).

With respect to her disability claim and all the reasons above, Quinn did not and cannot establish the third element of her disability claim. That is, Quinn did not produce any facts or jurisdictional evidence to establish that she was not given a new emergency-hire contract because of her disability. Quinn only alleged self-serving conclusory statements, which amount to legal conclusions, which is not competent prima facie evidence.

Therefore, Quinn failed to establish a required element to prove a prima facie case of discrimination based on age and disability pertaining to the emergency-hire contract non-renewal claim. This Court must reverse the lower court's denial of TXST's plea to the jurisdiction on this issue.

2. *Quinn's claim based on the non-issuance of a new emergency hire contract is actually a failure to hire claim which fails as one of the required elements of a prima facie case of age and disability discrimination is not established.*

Quinn's age and disability discrimination allegations are really failure to hire claims. To establish a prima facie case of discrimination based on failure to hire,

16

the plaintiff must show that: (1) she was a member of a protected class; (2) she sought and was qualified for an available employment position; (3) she was not selected for the position; and (4) the employer selected someone outside her protected class. *See Beebe v. City of San Antonio,* No. 04-13-00134-CV, 2014 Tex. App. LEXIS 10120 (Tex. App. San Antonio Sept. 10, 2014, no pet.); *Tex. HHS Comm'n v. Baldonado*, No. 13-14-00113-CV, 2015 Tex. App. LEXIS 4375 (Tex. App.—Corpus Christi Apr. 30, 2015, no pet.) (citing to *Mission Consol. Ind. Sch. Dist.*, 372 S.W.3d at 636).

Notwithstanding the fact that Quinn failed to allege facts that someone outside of her protected class replaced her and thus failed to establish required elements, she also failed to establish the second element in a failure to hire claim. There are no facts pled or jurisdictional evidence produced by Quinn that she sought another emergency-hire contract. She also failed to plead any facts showing that there was another emergency-hire contract available. This is because there was no other emergency-hire contract available since she had completed the work. (CR 175-180).

Therefore, under the failure to hire analysis, Quinn failed to establish that she was replaced by someone younger than she and that she even sought an available position. This Court must reverse and render the lower court's denial of

17

TXST's plea to the jurisdiction on this issue.

> 3.  *Since Quinn was hired under a term contract with a beginning and ending date, Quinn suffered no adverse employment decision, therefore she did not establish a prima facie disability or retaliation claim as a matter of law.*

As argued above, one of the required elements of a disability discrimination claim is that an adverse employment action occurred because of the disability. For retaliation under the TCHRA, a plaintiff must show (1) that she engaged in a protected activity listed in Section 21.055 of the Texas Labor Code, (2) that an adverse employment action occurred, and (3) that a causal link existed between her participation in the protected activity and the adverse employment action. *Pineda v. United Parcel Serv., Inc.*, 360 F.3d 483, 487 (5th Cir. 2004); *Crutcher v. Dallas Indep. Sch. Dist.,* 410 S.W.3d 487, 493 (Tex. App.—Dallas 2013, no pet.)*; Dias v. Goodman Mfg. Co.*, 214 S.W.3d 672, 676 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). Quinn did not suffer an adverse employment action regarding her term emergency-hire contract.

The jurisdictional evidence establishes that Quinn suffered no adverse employment action by not receiving a new emergency hire contract. Indeed, Quinn knew at the time she entered into the last emergency-hire contract, or should have known from the language of the contract and the provisions of Texas law, that the

18

contract gave her no right to continued employment since the work she was hired to perform was ending. (CR 182-183). *See Moini v. Univ. of Tex. at Austin*, 832 F. Supp. 2d 710, 725 (W.D. Tex. 2011); Nunez *v. Simms*, 341 F.3d 385, 391 (5th Cir. 2003).

For an "adverse employment action" in the context of a retaliation claim, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which…means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). There can be no adverse action under these facts because on the date Quinn entered into the contract, she knew the contract would end. (CR 182-183). Quinn had no expectation to enter into an additional emergency-hire contract.

The language and terms of the emergency-hire contract unquestionably show that the time period of the contract is September 1, 2012 to May 31, 2013. (CR 182-183). The terms also show that the contract cannot be renewed unless in writing and agreed to by both parties. *Id*. Furthermore, an email between Quinn and her supervisor show that the contract and work was to be complete at the end of the term. (CR 175-180; CR 182-183); *See Markwell v. Culwell*, 515 F.2d 1258, 1259 (5th Cir. 1975) (per curiam) (holding that teacher's property interest in his

employment was "limited by the year-to-year contract and his probationary status"); *see also Hix v. Tuloso-Midway Indep. Sch. Dist.*, 489 S.W.2d 706 (Tex. Ct. App.—Corpus Christi 1972, writ ref'd n.r.e.) (Holding that teacher did not have a property interest in employment beyond contract term where he had "neither a legitimate claim nor legal expectation of re-employment").

### i.     *Guidance from other courts throughout the Country.*

Courts throughout the country have held that in a failure to renew a fixed-term contract that because the plaintiff was not fired, discharged, or terminated non-renewal of this type of employment contract does not constitute an adverse employment action. *See Daly v. Exxon Corp.*, 55 Ca. App. 4th 46 (1997); *Motevalli v. Los Angeles Unified School District*, 122 Cal. App. 4th 97, 106 (2004); *Bajalo v. Northwestern Univ.*, 369 Ill. App. 3d 576, 586 (2006); *Wells v. Board of Trustees of California State University*, 393 F.Supp.2d 990, 997 (N.D. Cal 2005) ("In California, an employee whose fixed-term contract is not renewed cannot state a claim for wrongful termination in violation of public policy.").

Although Texas, it appears, has not yet addressed this issue, this State should adopt the same approach. Indeed, for public policy reasons, a finding that an employee suffers an adverse employment action simply by entering into a term contract would send a chilling effect on employers entering into term contracts

20

state-wide. In other words, along with the clear terms of the term-contract comes an automatic adverse employment action.. It is against public policy to create an automatic adverse employment action simply because the term of the contract expires.

Therefore, since it is against public policy to inject an adverse employment action—that will result in litigation—in every fixed-term contract this Court should find that Quinn did not suffer an adverse employment action. The trial court's denial of TXST's plea to the jurisdiction must be reversed and an order granting its plea must be rendered.

    *4.*     *On August 2, 2012, Quinn learned that her last emergency-hire contract expired at the end of May 2013, which marks the date she learned the contract would not be renewed and therefore fails the "but for" test for retaliation.. (CR 182-183).*

Assuming this Court determines that Quinn did suffer an adverse employment action resulting from the non issuance of a new emergency-hire contract, she did not plead a prima facie case of retaliation because the adverse action took place before she engaged in any protected activity, which fails the "but for" test.

Quinnassers that the first time she engaged in protected activity was the May 14, 2013 letter from Mr. Walsh. This is fatal to her retaliation claim. Quinn

21

learned on August 2, 2012—over ten months before any protected activity—that her emergency hire contract would expire on May 31, 2013. (CR 182-183). Therefore, the purported adverse employment action occurred on August 2, 2012. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (1996) (The limitations period begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition. *Delaware State Coll.* v. *Ricks*, 101 S.Ct. 498 (1980); *Price v. Litton Business Sys., Inc.*, 694 F.2d 963, 965 (4th Cir.1982)). Quinn signed her second and last emergency hire contract on August 2, 2012. (CR 182-183). In that contract, it specifically states that the contract will end on May 31, 2013. (CR 182-183). Because the first protected activity occurred *after* the purported adverse employment action, Quinn cannot show that but for engaging in the protected activity she would not have suffered the adverse employment action.. For this reason, Quinn cannot establish a prima facie case for retaliation for the non-renewal or the non-issuance of a new emergency hire contract. The trial court lacked subject matter jurisdiction over this claim, therefore it erred in denying TXST's plea to the jurisdiction.

**D.    The Trial Court Erred by Denying TXST's Plea to the Jurisdiction Because Quinn Failed to Establish a Prima Facie Failure to Hire Case Based on Age and Disability Discrimination Pertaining to Associate**

22

**Clinical Professor Job Posting (Job Posting 2013-55).**

    *1.    Quinn did not show that she was qualified for Job Posting 2013-55 because her self-serving conclusory statements did not support a prima facie case of discrimination.*

Again, to establish a prima facie case for failure to hire based on discrimination, Quinn must show: (1) she was a member of a protected class; (2) she sought and was qualified for an available employment position; (3) she was not selected for the position; and (4) the employer selected someone outside her protected class. *See Beebe v. City of San Antonio,* No. 04-13-00134-CV, 2014 Tex. App. LEXIS 10120 (Tex. App. San Antonio Sept. 10, 2014, no pet.); *Tex. HHS Comm'n v. Baldonado*, No. 13-14-00113-CV, 2015 Tex. App. LEXIS 4375 (Tex. App.—Corpus Christi Apr. 30, 2015, no pet.) (citing to *Mission Consol. Ind. Sch. Dist.*, 372 S.W.3d at 636).

Quinn challenges the legitimacy of the selection decision pertaining to job posting 2013-55 because in her view, she was qualified for the position. However, merely disputing [the employer's] assessment of [the employee's] qualifications will not create an issue of fact" regarding discriminatory intent. *McCoy v. Texas Instruments, Inc.*, 183 S.W.3d 548, 555 (Tex. App.—Dallas 2006, no pet.); *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 440 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) ("The evidence of relative qualifications must be more than merely

23

subjective and speculative. It must be specific and comparative in nature.").

Employment discrimination laws "were not intended to be vehicles for judicial second-guessing of employment decisions nor intended to transform courts into personnel managers." *Texas Instruments*, 183 S.W.3d at 555-56 (citing *Jaso v. Travis Cnty. Juvenile Bd.*, 6 S.W.3d 324, 332 (Tex. App.—Austin 1999, no pet.)).

### i. *TXST determined that Quinn did not meet the objective requirements of Job Posting 2013-55..*

Job Posting 2013-55 was an associate professor full-time position teaching in the undergraduate program. (CR 175-180; CR 184-186). This is a positon teaching nursing students the first-line, front-line, hands-on, bed-side patient care required to obtain their undergraduate degree. (CR 175-180; CR 184-186). Job posting 2013-55 required, among other things, five years of clinical experience, which Quinn failed to demonstrate throughout all of the various documentation she submitted to the search committee. (CR 127).[4] The five year clinical experience requirement was an objective standard. In order to teach nursing students first-line, front-line, hands-on, bed-side patient care, the applicant was required to demonstrate she/he had at least five years of continuous fulltime first-line, front-line, hands-on, bed-side patient care as a nurse. (CR 175-180). Quinn failed to do

---

[4] At p.126, ln. 21- p. 127, ln. 15.

24

so in the application process. The jurisdictional evidence unquestionably establishes that she made no such showing.

Specifically, a review of Quinn's documented experience shows that she had experience in program development, teaching, consulting, integrative psychotherapy, and healthcare facility administration. (CR 440-457). Indeed, the only mention of "clinical experience" appears to be during her employment as a Chief Healthcare Officer and CEO of Discovery Integrative Psychotherapy Centers, where she claims to have had clinical duties. (CR 440-457).

Quinn, failed to identify if those alleged clinical duties involved nursing or psychotherapy. She also failed to identify the time period involved in those alleged clinical duties. Not surprisingly, having the status of a registered nurse ("RN") does not equate to having clinical nursing experience. (CR 175-180). It is possible to be an RN and not have clinical experience. (CR 175-180).

Along with her CV, Quinn submitted a three-page cover letter outlining her qualification. (CR 198-200). In that three-page cover letter, the word or a form of the word "clinic" is mentioned a total of three times. (CR 198-200). None of those provided any indication that she had at least five years of clinical experience as a nurse. None of the documents Quinn submitted with her application, in response to job posting 2013-55, demonstrates that she had at least five years of clinical

experience as a nurse. A cover letter and a CV was the only information Quinn provided to TXST when she applied for the Clinical Assistant/Associate Professor position–a fact Appellee admitted during her sworn deposition.

Ultimately, Quinn and one of her colleagues, who had also applied for this position, did not meet one of the mandatory objective job requirement. (CR 214-218). Specifically, neither Quinn nor her colleague had five (5) years of clinical nursing experience and were consequently determined by the search committee to be ineligible for the position. (CR 214-218). Quinn did not demonstrate she had at least five (5) years of clinical nursing experience, so she was not offered an interview. (CR 175-180). Appellee did not qualify for the job. (CR 202).

Appellee attempts to raise a question of fact with subjective self-serving conclusory statements without any merit. Quinn also attempts to raise a question of fact by asking the lower court and this Court to assume that since she is a licensed nurse that she must have the objective required five years of experience. But she lacks any evidence to support her claim other than her conclusory statements. Quinn failed to provide any competent jurisdictional evidence objectively demonstrating that she had at least five years of continuous fulltime first-line, front-line, hands-on, bed-side patient care as a nurse. Need cite to whatever she provided. She offers nothing but suggestions, innuendos, suppositions, and

26

hypotheticals that she had five years of clinical nursing experience, but none of it is supported by competent evidence raising a question of fact. An employee may overcome a lack of objective qualifications at the prima facie stage if he can demonstrate that the objective requirements were not applied to the employee(s) actually hired. *Johnson v. Louisiana,* 351 F.3d. 616, 624-25 (5th Cir. 2003).

Quinn failed to demonstrate that TXST did not apply the objective qualifications. Indeed, the jurisdictional evidence establishes that the objective qualifications were applied by the search committee. (CR 213-218). In fact, a colleague outside of Quinn's protected class was also not chosen for an interview because she also did not qualify because she failed to objectively demonstrate five years of clinical experience. (CR 175-180).

. uinn unquestionably failed to raise a fact question on this point. Her only support for the assertion that she qualified for job posting 2013-55 was her own self-serving subjective conclusory statements.

In a conclusory self-serving manner, Quinn, alleged that she was qualified for Job Posting 2013-55. However, TXST produced uncontroverted jurisdictional evidence that Quinn was not qualified for the position.

   2.   *Quinn failed to establish a prima facie case that she did not get an interview for Job Posting 2013-55 because of her disability.*

27

Although this is a failure to hire claim, the court can also consider the elements in a disability discrimination claim. As argued above, in order for Quinn to prove a disability claim, she must show that she: (1) has a "disability," (2) she is "qualified" for the job; and (3) she suffered an adverse employment decision because of her disability. *Artco-Bell Corporation,* No. 03-08-000690-CV, 2010 Tex. App. LEXIS 2774, 2010 WL 1507796 (Tex.App. —Austin 2010, no pet.); *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex.App.—Fort Worth, 2006, pet. denied); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996); *Davis*, 188 S.W.3d at 757. Quinn is unable to establish that she was not chosen for an interview for Job Posting 2013-55 because of her alleged disability.

Quinn must plead non-conclusory self-serving facts or produce jurisdictional evidence to support each element of the claim. She failed to do so in establishing the third prong. Her own sworn testimony contradicts her assertion that TXST failed to interview her because of a disability. During Quinn's deposition, she testified as follows:

> "No faculty member said or did anything about my age or my disability except for one thing. There was a meeting that was going on, and I was having extreme pain, and I was in the meeting and sitting at a table. And Marla came by and she said, "Well, how are you doing?" And I said, "Just fine." And one of the faculty – I think is was Cindy Zolnierek. Cindy said, "She's not doing just fine. Look at her. She's in pain." And Marla said "Well, what's hurting you?" And I said, "My feet and my

28

ankles are hurting me." And she said, "Well, stay off of them," or something like that, and went on."

(CR 134-135).[5] In an incident Quinn offers as circumstantial evidence of discrimination, she offered the following during her sworn deposition:

Q: "Okay. At any time in that exchange with Dr. England, did she make any comments to you about your age?

A: (Witness shook head no.).

Q: Is that a 'no"?

A: I'm sorry. The answer to your question is no, she did not.

Q: Okay. And, at that time, that incident with Dr. England we were just now discussing, did she ever make a statement about any type of disability or the alleged disability that you're—you're— involving your feet and your hands?

A: No.

(CR 80).[6] There is no direct or circumstantial evidence to support discrimination based on age or disability by anyone, and certainly not by anyone with power over employment decisions. Quinn failed to produce creditable or competent jurisdictional circumstantial evidence.

3.    *There are no facts pled or jurisdictional evidence produced showing that the search committee determined not to interview Quinn because of her disability.*

---

[5] At p. 157, ln. 19-p. 158, ln. 13
[6] At p. 80, ln. 6-18.

Undisputed jurisdictional evidence proves that a search committee was assembled to: review credentials, determine qualifications, and select candidates for interviews for Job Posting 2013-55. (CR 175-180). It was the search committee that determined who was chosen for interviews pertaining to Job Posting 2013-55. (CR 175-180). These are undisputed facts. It is also undisputed that the search committee members were made up of faculty outside of the nursing school. (CR 175-180). Quinn failed to plead facts or produce any evidence showing that the search committee failed to offer her an interview because of her alleged disability or that the committee even knew about her alleged disability, other than her conclusory statements. It was the search committee that determined Quinn did not have an objective job requirement. (CR 175-180; CR 202).

4. *The Jurisdictional evidence shows that Quinn never informed anyone at TXST of a disability that affected her ability to perform her job, so the decision not to interview Quinn for Job Posting 2013-55 was not because of her alleged disability.*

The decision not to offer Quinn an interview was not because of her alleged disability. In fact, the jurisdictional evidence shows that Quinn never informed anyone that she suffered a disability that affected her ability to perform her job. Notably, the **employee has the burden of letting the employer know about her disability and any limitations resulting from that disability**. *Taylor v. Principal*

*Fin. Grp., Inc.*, 93 F.3d 155, 163–64 (5th Cir. 1996) (emphasis added). "[I]t is important to distinguish between an employer's knowledge of an employee's disability versus an employer's knowledge of any limitations experienced by the employee as a result of that disability." *Id.* at 164. "[T]he ADA requires employers to reasonably accommodate limitations, not disabilities." *Id.* "This is a critical distinction, because the existence vel none of a disability or impairment is material to a reasonable accommodation claim only insofar as it limits an employee's ability to perform his or her job." *Burch v. Coca-Cola Co.*, 119 F.3d 305 (5th Cir. 1997).

It is not a question of whether Quinn had a condition that would be considered a "disability" under the ADA or Chapter 21 of the Texas Labor Code. The issue is whether TXST knew of that alleged disability and the limitations and if TXST made an adverse employment decision because of that disability. The jurisdictional evidence unquestionably shows that Quinn did not tell TXST of her alleged disability and most importantly any limitations resulting from the alleged disability. (CR 175-180). Therefore, Quinn is unable to establish the causation element.

Again, to prevail on a discrimination claim under either Chapter 21 or the ADA, Quinn must prove (1) that she has a "disability," (2) that she is "qualified" for the job, and (3) that an adverse employment decision was made solely because

31

of her disability. *Davis v. City of Grapevine*, 188 S.W.3d 748, 757 (Tex.App.—Fort Worth 2006, pet. denied); *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996).

Quinn also asserts disability discrimination based on "failure to accommodate," because (1) TXST allowed her to be harassed, abused, and intimidated and (2) TXST ignored her when she asked to be allowed to work from home in the event that she would be hired to work in the future. To establish a "failure to accommodate" claim, the plaintiff must show: (1) that she is an individual with a disability; (2) that an employer covered by the statute had notice of her disability; (3) that with reasonable accommodations she could perform the essential functions of the position; and (4) that the employer has refused to make such accommodations. *Davis*, 188 S.W.3d at 758.

Quinn never informed TXST of a disability that affected her work much less an accommodation addressing some disability. *See Taylor v. Principal Fin. Grp., Inc.*, 93 F.3d 155, 163–64 (5th Cir. 1996) (emphasis added). If a plaintiff makes a valid request for reasonable accommodation for a disability, the employer has an obligation to engage in an "interactive process" to determine the best means of accommodating the plaintiff's disability. *Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 n.4 (5th Cir. 1999). "The ADA provides a right to reasonable

32

accommodation, not to the [plaintiff's] preferred accommodation." *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 471 (5th Cir. 2009).

The jurisdictional evidence shows that Quinn did not seek an accommodation because of her alleged disability. The ADA defines "reasonable accommodation" as:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and

> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C.A. § 12111(9)(2009).

Quinn bore the burden of proving that an accommodation of her alleged disability existed and that such accommodation was reasonable. *See Riel v. Electronic Data Systems Corp.*, 99 F.3d 678, 683 (5th Cir. 1996). Quinn failed to meet that burden because what Quinn considers an accommodation request was not related to an alleged disability. Her first request was that she not be harassed, abused, or intimidated by her peers. As Quinn testified under oath and Appellant cited above, none of the alleged harassment, abuse, or intimidation related to her age or disability. The testimony of Quinn's supervisor, Marla Erbin-Roesemann is

as follows:

> A:   And when Dr. Quinn asked for accommodations, she never asked for accommodations for a disability. She asked me to be able to – and she didn't even say, "Accommodations." She just asked me if she could work from home. She never, at any time, said she was asking for, really, accommodations for a disability.

(CR 228).[7] Therefore, a decision not to offer Quinn an interview was not because of her alleged disability. The jurisdictional facts establish that Quinn has not shown a prima facie case of disability discrimination. The trial court erred by denying TXST's plea to the jurisdiction on whether Appellant did not offer her an interview for Job Posting 2013-55 because of her alleged disability.

**E.    Whether the Trial Court Erred by Denying TXST's Plea to the Jurisdiction regarding Quinn's Retaliation Claim pertaining to Job Posting 2013-55 Because she Cannot Establish the Requisite Causation Element.**

A plaintiff must "demonstrate[] that 'the employer's decision  was based in part on knowledge of the employee's protected activity.'"  *Equal Employment Opportunity Comm'n v. Omni Hotels Mgmt. Corp.*, 516 F.Supp.2d 678, 704 (N.D. Tex. 2007) (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).

In a court's consideration of whether a causal link exists, the "focus is on the final decision maker." *Omni Hotels*, 516 F.Supp.2d at 706 (citing *Gee v. Principi*,

---

[7] At p. 200, ln. 12-18.

34

289 F.3d 342, 346 (5th Cir. 2002). To satisfy the causation requirement for a *prima facie* case of retaliation, a plaintiff must establish that without the protected activity, the employer's prohibited conduct would not have occurred when it did. *See Dep't of Human Servs. v. Hinds*, 904 S.W.2d 629, 636 (Tex. 1995); *Chandler v. CSC Applied Techs., LLC*, 376 S.W.3d 802, 823 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). In other words, the plaintiff must establish a "but for" causal nexus between his protected activity and the employer's prohibited conduct. *Tex. Natural Res. Conservation Comm'n v. McDill*, 914 S.W.2d 718, 723 (Tex. App.—Austin 1996, no writ).

It is undisputed that Quinn's supervisor and decision maker was Dr. Marla Erbin-Roesemann. Other than her baseless conclusory allegations, Quinn's First Amended Petition is entirely void of any facts supporting a *prima facie* case of retaliation linking the decision not to interview Quinn for job posting 2013-55 and Quinn filing an EEOC charge. It would require this Court to believe that both Dr. Marla Erbin-Roesemann, Dean Ruth Welborn, and the independent three-person hiring committee conspired against Quinn for filing an EEOC charge.

Moreover, as stated above, an independent search committee made up of three faculty members of the Collage of Health Professionals reviewed all applicants' materials, including Quinn's, and determined that she did not qualify

35

for the position since she did not demonstrate that she had five years of clinical experience.  Quinn has failed to produce a scintilla of evidence that the search committee had any knowledge of her EEOC charge or of any matters made the basis of this lawsuit. Quinn did not satisfy the causation requirement for a *prima facie* case of retaliation. A plaintiff must establish that without the protected activity, the employer's prohibited conduct would not have occurred when it did. Therefore this Court should reverse the trial court's denial of TXST's plea to the jurisdiction on Quinn's retaliation claim and render an order granting TXST's plea to the jurisdiction.

## PRAYER

For all the reasons described above, TXST respectfully requests that this Court reverse the lower court's denial of its plea to the jurisdiction, and dismiss all of Quinn's claims with prejudice.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

*/s/Enrique M. Varela*
ENRIQUE M. VARELA
Assistant Attorney General
Texas Bar No. 24043971
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 463-2120 PHONE
(512) 320-0667 FAX
Enrique.varela@oag.texas.gov
ATTORNEYS FOR APPELLANT

37

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2016, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

Colin Walsh
Rob Wiley, P.C.
1011 San Jacinto Blvd, #401
Austin, Texas 78701
(512) 271-5527
(512) 287-3084 facsimile
TBN 24079538
cwalsh@robwiley.com
intake@robwiley.com

*/s/ Enrique M. Varela*
ENRIQUE M. VARELA
ASSISTANT ATTORNEY GENERAL

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P 9.4(i)(3), I certify that this brief contains 7836 words, exclusive of the exempted portions in Tex. R. App. P. 9.4(i)(1).

*/s/Enrique M. Varela*
ENRIQUE M. VARELA
Assistant Attorney General

No. 03-16-00548-CV
_____

COURT OF APPEALS
THIRD DISTRICT OF TEXAS
_____

TEXAS STATE UNIVERSITY,
Appellant

v.

DR. KATHLEEN QUINN,
Appellee
_____

On Appeal from the 26th Judicial District Court of Williamson County, Texas
Cause No. 14-1061-C26
_____

**APPENDIX TO BRIEF OF APPELLANT**
_____

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
DEPUTY FIRST ASSISTANT
ATTORNEY GENERAL

JAMES E. DAVIS
Deputy Attorney General for Civil
Litigation

ANGELA V. COLMENERO
Chief, General Litigation Division

ENRIQUE M. VARELA
Assistant Attorney General
Texas Bar No. 24043971
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 (FAX)
Enrique.varela@texas.oag.gov

ATTORNEYS FOR APPELLANT
**ORAL ARGUMENT REQUESTED**
October 7, 2016

# **INDEX**

Order Denying Defendant's Plea to the Jurisdiction ................................... Tab 1

# Tab 1

CAUSE NO. 14-1061-C26

| DR. KATHLEEN QUINN, | § | IN THE DISTRICT COURT |
|---|---|---|
| Plaintiff, | § | |
| | § | |
| v. | § | 26th JUDICIAL DISTRICT |
| | § | |
| TEXAS STATE UNIVERSITY | § | |
| | § | |
| Defendant. | § | WILLIAMSON COUNTY, TEXAS |

---

## ORDER DENYING DEFENDANT'S PLEA TO THE JURISDICTION

---

Came to be considered Defendant Texas State University's Plea to the Jurisdiction. After Consideration of the motion, any response, and argument of counsel, the motion is DENIED.

SIGNED THIS _7_ DAY OF _July_, 2016

_____
Honorable Judge Donna King

FILED
8:25 o'clock A M
JUL 12 2016
District Clerk, Williamson Co., TX.

1